COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| | § | |
| HOMELAND EXPRESS, L.L.C., | | |
| HOMELAND TRUCK LINES, | § | |
| TSATENAWA-NKOGO TRANSPORT, | | No. 08-10-00287-CV |
| and ATSEKO TSATENAWA, | § | |
| | | Appeal from the |
| | § | |
| Appellants, | | 205th District Court |
| | § | |
| | | of Culberson County, Texas |
| v. | § | |
| | | (TC# 4643) |
| | § | |
| TANIA SEALE and MATTHEW E. | | |
| SEALE, | § | |
| | | |
| | § | |
| Appellees. | | |
| | § | |

**O P I N I O N**

In this personal injury case, Homeland Express, LLC, Homeland Truck Lines, Tsatenawa-Nkongo Transport, and Atseko Tsatenawa (collectively Appellants) appeal the trial court's judgment in favor of Tania Seale and Matthew E. Seale. For the reasons that follow, we affirm.

**FACTUAL SUMMARY**

At approximately 6 a.m. on a winter morning, while it was still pitch black and the traffic on the eastbound lanes of Interstate 10 was sparse, Atseko Tsatenawa parked his 18-wheel tractor-trailer on the shoulder to investigate why the "check engine" light had come on and the engine had begun overheating. Although the shoulder was approximately eleven feet wide and the rig approximately nine feet wide, Tsatenawa failed to park completely within the shoulder. As a result, a portion of the trailer protruded into the right-hand lane of the highway. Tsatenawa

failed to place reflective warning devices behind the rig as a commercial driver must do when parking on the shoulder of a roadway.

Some ten to fifteen minutes later, Gary Dean Elrod and his 14-year-old grandson, Matthew Seale, approached the parked rig as they traveled eastbound on I-10 in Elrod's van. As Elrod grew closer, the driver of a white pick-up truck with blue flames painted on the sides suddenly passed Elrod and, just as quickly, changed lanes and cut in front of him. Elrod swerved to the right onto the shoulder, and, as he attempted to steer back into the right-hand lane of the highway, clipped the left rear of the 18-wheeler with the van's right-front bumper. After sliding along the trailer's side, the van collided with the tires located on the rear axle of the tractor and came to rest in front of and facing the tractor. Matthew, who was asleep during the accident, suffered severe injuries.

Tania Seale, Matthew's mother, filed suit individually and on behalf of Matthew seeking damages and exemplary damages under various theories of liability, including negligence/gross negligence, respondeat superior, and negligent entrustment. At trial, Jim Mallory, the Seales' accident reconstruction expert, testified that, regardless of why Elrod drove onto the shoulder – whether as a result of having evaded a collision with the white pick-up truck or having fallen asleep, as alleged by Appellants – the accident would not have occurred had Tsatenawa not parked where he had. The jury returned a verdict in favor of the Seales, finding Appellants and Elrod negligent, determining that Appellants were responsible for 70 percent of the accident and Elrod 30 percent, and awarding Mathew approximately $2 million and Tania $34,000 in damages.

In accordance with the jury's determination of the percentage of responsibility and its verdict, the trial court signed a judgment in favor of the Seales against Appellants, awarding

2

damages and prejudgment interest to the Seales and assessing costs against Appellants. Appellants timely moved for a new trial, arguing, among other things, that the trial court erred in excluding a police report showing that the 18-wheeler was legally parked, and that the evidence was factually insufficient to support the jury's finding that they were negligent or that their acts and omissions were a proximate cause of the accident. Appellants also moved for judgment notwithstanding the verdict on the basis that the evidence was legally insufficient to support the jury's finding that their acts and omissions were a proximate cause of the accident. These post-trial motions were overruled by operation of law.

## PROXIMATE CAUSE

In their first issue, Appellants challenge the sufficiency of the evidence to support the jury's finding that their acts and omissions were the proximate cause of the accident.

### *Standard of Review*

In reviewing the legal sufficiency of the evidence, we must consider the evidence in the light most favorable to the verdict, and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). The evidence is legally sufficient if it would enable fair-minded people to reach the finding under review. *Id.* at 827. On the other hand, the evidence is legally insufficient if: (1) there is a complete absence of evidence of a vital fact; (2) the trial court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). The evidence offered to prove a vital fact is no more than a mere scintilla if it so weak as to do no more than create a mere surmise or

3

suspicion that a vital fact exists. *Id.*

In reviewing the factual sufficiency of the evidence, we must consider and weigh all the evidence and set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)(per curiam). We do not engage in our own factual review. Rather, the trier of fact is the "sole judge of the credibility of the witnesses and the weight to be given their testimony." *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). We may not substitute our judgment for that of the trier of fact. *Walker v. Gutierrez*, 111 S.W.3d 56, 63 (Tex. 2003).

### *Applicable Law*

To prevail on a common law negligence claim, a plaintiff must plead and prove that the defendant's negligence was the proximate cause of the injury. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). To establish proximate cause, a plaintiff must prove foreseeability and cause in fact. *Id.* The test for cause in fact is whether the negligent act or omission was a substantial factor in bringing about the injury, without which the harm would not have occurred. *Id.* Cause in fact is not shown if the defendant's negligence did no more than furnish a condition that made the injury possible; that is, even if the injury would not have occurred but for the negligence, there is no legal cause if the connection between the negligence and the injury is too attenuated or remote. *Id.* "The evidence must go further, and show that such negligence was the proximate, and not the remote, cause of the resulting injuries [and] justify the conclusion that such injury was the natural probable result thereof." *Carey v. Pure Distrib. Corp.*, 133 Tex. 31, 34, 124 S.W.2d 847, 849 (1939). An injury is the natural probable result of a defendant's conduct and thus a substantial factor in bringing about the injury if a reasonable person

4

would "regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility . . . ." *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 472 (Tex. 1991), *quoting* Restatement (Second) of Torts § 431 cmt. a (1965).

## *Legal Sufficiency*

We begin by evaluating whether a reasonable juror could ascribe to Tsatenawa responsibility for causing the accident by parking the rig where he did and failing to place reflective warning devices behind it. In so doing, we are mindful that there may be more than one proximate cause of a plaintiff's injuries and that the issue of proximate cause is usually a question of fact to be resolved by a jury. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 774 (Tex. 2010); *Lear Siegler, Inc.*, 819 S.W.2d at 471; *see Farley v. MM Cattle Co.*, 529 S.W.2d 751, 756 (Tex. 1975); *Clark v. Waggoner*, 452 S.W.2d 437, 440 (Tex.1970).

Simply stated, Appellants contend that Mallory's testimony was legally insufficient to constitute cause in fact. Mallory testified that, unless a commercial driver has no other option because of a disabled vehicle, a rig should never be parked on the shoulder of a roadway because it is too dangerous for other motorists. He referred to various handbooks and studies, including a 2002 study from the National Highway Transportation Administration that concluded that commercial vehicles "park[ed] on the shoulder of . . . roadways . . . can be a significant contributing factor to the injury or fatal crash." Tsatenawa testified that he parked on the shoulder because he was afraid that unless he investigated why the check engine light had come on and why the engine was overheating, he could have damaged the engine. But he did not testify that the 18-wheeler was disabled, and, in fact, it was idling as he sat in the cab. Significantly, Mallory testified that Tsatenawa did not need to stop because the engine was programmed to continue

running until a problem serious enough to threaten its operation arose, at which point the engine would have begun shutting down slowly until it stopped completely. Mallory also opined that based on the rig's position after the accident, it was likely within the lane of travel when Tsatenawa parked it because the force of the impact would have moved the trailer toward the shoulder, not toward the line dividing the shoulder from the roadway as Tsatenawa claimed. When shown pictures of the 18-wheeler's position after the accident, Tsatenawa acknowledged that a portion of the trailer protruded into the lane of travel.

Mallory explained to the jury that, pursuant to state and federal regulations, a commercial driver has a legal obligation to place reflective warning devices behind a vehicle parked on the shoulder of a roadway as quickly as possible, but no later than ten minutes after parking. These devices are intended to warn motorists that a commercial vehicle is parked ahead on the shoulder. Had the triangles been in place as required, Mallory believed the accident would have not occurred because Elrod would have known where the rig was parked and would have known not to swerve onto the shoulder when trying to avoid a collision with the pick-up truck. Elrod testified that he did not see any triangles behind the 18-wheeler.

When considered in the light most favorable to the verdict, and indulging every reasonable inference that supports it, this evidence was legally sufficient to have permitted reasonable and fair-minded jurors to conclude that the accident was a natural and probable result of Tsatenawa's acts and omissions and that, therefore, his conduct was a substantial factor in causing the accident.

Appellants next urge that, as a matter of law, the nexus between the rig and the resulting accident was too attenuated to constitute cause in fact. They posit that whether Tsatenawa was negligent is irrelevant because his acts and omissions did no more than furnish a condition that

6

made the accident possible.  In support, they direct us to *Bell v. Campbell*, 434 S.W.2d 117 (Tex. 1968), *Union Pump Co. v. Allbritton*, 898 S.W.2d 773 (Tex. 1995), and *Lear Siegler*, cases in which legal causation was absent because the defendants' alleged negligence simply created a condition that drew the plaintiffs to the scene of the accident.  Their reliance is misplaced.

In *Bell*, the court held that the drivers whose collision caused a trailer attached to one of the vehicles to disengage and overturn into the opposite lane were not liable for the injuries the plaintiffs sustained when they were struck by another driver while attempting to move the trailer. 434 S.W.2d at 118-19.  The court reasoned that the collision was too attenuated to constitute legal cause.  Because the forces generated by the collision had run their course and were complete when the plaintiffs were injured, the collision did not actively contribute to the injuries and merely created the condition for their occurrence.  *Id.*  In *Lear Siegler*, the court determined that the manufacturer of a warning sign was not liable for the injuries a government employee sustained when he was struck by a sleeping driver while reconnecting loose wires in the sign.  819 S.W.2d at 472.  The court reasoned that the sign's malfunction was too remotely connected with the employee's injuries to constitute legal cause because the proper operation of the sign would have had no effect on the sleeping driver.  *Id.*

Here, Tsatenawa's failure to comply with regulations specifically enacted to protect motorists did not simply cause Matthew to be in the wrong place at the wrong time; it was a substantial factor in bringing about the accident.  And in contrast to *Bell* and *Lear Sigler*, the negligence of a third party – the driver of the white pick-up truck – did not disrupt the nexus between Tsatenawa's negligence and Matthew's injuries.  The accident occurred immediately after Elrod was cut off and in the location where the rig was parked.  Consequently, the position of

7

the rig was not geographically, temporally, or causally distant from Tsatenawa's negligence.

Finally, in *Union Pump*, the court concluded that the manufacturer of a pump that ignited a fire at a chemical plant was not liable for the injuries a plant employee sustained when she fell after she repaired the valve once the fire had been extinguished. 898 S.W.2d at 774. The court reasoned that the pump's malfunction was too remotely connected with the employee's injuries to constitute legal cause because the forces generated by the fire had come to rest when the employee fell from the pipe rack wet from fire-extinguishing liquid. *Id*. at 776. This case is distinguishable because the dangerous situation resulting in Matthew's injuries never abated. When Elrod collided with the 18-wheeler, Tsatenawa had been parked in the dark in the same spot on the shoulder for at least ten minutes. In short, the forces generated by Tsatenawa's conduct had not "come to rest."

Citing to *Reinicke v. Aeroground, Inc.*, 167 S.W.3d 385 (Tex.App.--Houston [14th Dist.] 2005, pet. denied)(plurality opinion), Appellants also maintain that, as a matter of law, the accident was caused by an independent and intervening agency -- the truck that cut in front of Elrod. There a driver veered off a highway for no apparent reason and struck a vehicle parked on the side of the road, not in a lane of travel. 167 S.W.3d at 389. The court concluded that the mere parking of the vehicle outside any lane of travel was not a cause in fact of the accident because the other driver inexplicably left the roadway. *Id*. at 389, 392-93 (Fowler, J., concurring). Such is not the case here. Tsatenawa's rig was not only partially parked in a lane of travel, it was parked in the dark without warning devices designed to alert motorists of its location. And, unlike the driver in *Reinicke*, Elrod's acts were fully explainable and directly related to the risk created. Appellants have failed to establish that, as a matter of law, Tsatenawa's negligence was not a cause in fact of

Matthew's injuries.

## *Factual Sufficiency*

Appellants next complain that the evidence is factually insufficient. First, they posit that Elrod's claim that the white pick-up truck forced him off the road lacks physical evidence and corroborating testimony. Second, they suggest that the data from Elrod's airbag module refutes his claim that he was driving a certain speed and applied the van's brakes before colliding with the rig. Those issues were determined by the finders of fact in assessing the credibility of the witnesses and weighing all the evidence before them.

The overwhelming weight of the evidence supports the trial court's judgment. Although Appellants' accident reconstruction expert testified that nothing prevented Tsatenawa from parking on the shoulder, he did not affirmatively opine that Tsatenawa was justified in having done so given the circumstances. In sharp contrast, Mallory testified that Tsatenawa should have never parked on the shoulder because he had no viable reason to do so and in so doing, he contributed significantly to the accident. Although Tsatenawa testified that he parked completely within the shoulder, the veracity of his testimony was undermined when Mallory testified that had the rig been parked as Tsatenawa claimed, it would have moved closer to the shoulder and not been found protruding into the lane of travel. According to Mallory, it was likely that a portion of the trailer was in the lane of travel given its position after the accident. There is no dispute that the trailer was in the lane of travel following the accident. And although Tsatenawa testified that he placed the warning devices behind the rig, the photographs taken at scene show neither reflectors nor debris from reflectors that, had they been behind the rig, would have been smashed in the collision. Elrod testified that he did not see warning devices.

9

When considered and weighed, the overwhelming weight of the evidence in the record supports the trial court's judgment. Conversely, the evidence in the record that does not support the trial court's judgment is not so contrary as to render the judgment clearly wrong and unjust. We thus conclude that Appellants have failed to establish that the evidence supporting the jury's finding that Tsatenawa's negligence was a cause in fact of Matthew's injuries is factually insufficient. We overrule Issue One.

## EXCLUSION OF EVIDENCE

In their second issue, Appellants contend that the trial court erred by excluding the accident report by Department of Public Safety Officer Stacie Martin.

### *Standard of Review*

We review a trial court's decision to exclude evidence for an abuse of discretion. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005)(per curiam). A trial court abuses its discretion if it acts arbitrarily or unreasonably or without reference to any guiding rules and principles. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002)(per curiam), *citing Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). We may not reverse simply because we disagree with the trial court's decision; rather we may reverse only if the trial court acted in an arbitrary or unreasonable manner. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991), *citing Downer*, 701 S.W.2d at 242.

Even if the trial court abused its discretion in excluding the evidence, reversal is warranted "only if the error probably caused the rendition of an improper judgment." *See Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007); *see also* TEX.R.APP.P. 44.1(a)(1). We review the entire record, and require the complaining party to demonstrate that

10

the judgment turns on the particular evidence excluded.  *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007).   Thus, if erroneously excluded evidence was crucial to a key issue, the error was likely harmful.  *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 873 (Tex. 2008).   By contrast, exclusion is likely harmless if the evidence was cumulative and not controlling on a material issue dispositive of the case.  *Id.*; *Corrales v. Dept. of Family & Protective Services*, 155 S.W.3d 478, 486 (Tex.App.--El Paso 2004, no pet.).

### *Applicable Law*

The exclusion of an accident report is harmless error if the trier of fact is in as good a position as the law enforcement official authoring the report to form an opinion as to the cause of the accident and had no need for specialized knowledge to reach a decision.  *Pilgrim's Pride Corp. v. Smoak*, 134 S.W.3d 880, 893 (Tex.App.--Texarkana 2004, pet. denied); *Zimmer v. Miller Trucking Co., Inc.*, 743 F.2d 601, 604 (8th Cir. 1984).

Appellants complain that the report was crucial in establishing that the rig was parked legally on the shoulder and that Elrod was lying about the white pick-up truck since there was no mention of the truck in the report.   Assuming without deciding that excluding the report was error, we conclude that error, if any, was harmless.   The accident report was cumulative of other evidence and its contents failed to establish that the verdict would have been different had the jurors known of Martin's observations.

The accident report is cumulative because it contained nothing that the parties and their experts did not testify about at trial and was based on the same information to which all involved at trial had access, placing them ostensibly in the same position Martin was when she viewed the scene and wrote the report.   Martin arrived at the scene after the accident occurred.   Her report

11

was based on the same information that was used by the accident reconstruction experts to form their opinions.   The jurors heard Tsatenawa testify that he did not see the white pick-up truck pass him as the collision occurred and that he parked the 18-wheeler completely within the shoulder. The jurors also studied the pictures of the accident scene and the rig's position on the highway is what Martin observed when she wrote the report.   That the jurors chose to discredit all or some of this evidence was well within their province as fact finders.   They also could have chosen to credit Elrod's testimony that the white pick-up truck caused him to swerve onto the shoulder and the Seales' expert's testimony that the rig was parked partially in the lane of travel.

Because the report was cumulative of other evidence and its contents fail to establish that the jury's verdict would have been different had the jurors known about Martin's observations in her report, its exclusion did not cause the rendition of an improper judgment and was therefore harmless.   We overrule Issue Two and affirm the trial court's judgment.


October 31, 2012
                                                    ANN CRAWFORD MCCLURE, Chief Justice

Before McClure, C.J., Chew, C.J. (Senior), and Gomez, Judge
Chew, C.J. (Senior)(Sitting by Assignment)
Gomez, Judge (Sitting by Assignment)