

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00124-CV

**WESTFREIGHT SYSTEMS, INC.**,
Appellant/Cross-Appellee

v.

John Michael **HEUSTON**, Individually and as Dependent Administrator of the Estate of Juana
Garza, Deceased, and Geronimo Rodriguez, Individually,
Appellees/Cross-Appellants

From the 79th Judicial District Court, Jim Wells County, Texas
Trial Court No. 12-03-50966-CV
Honorable Richard C. Terrell, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:    Karen Angelini, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  June 17, 2015

AFFIRMED

Westfreight Systems, Inc. appeals a judgment awarding damages to the heirs of Juana

Garza, who died after colliding with an 18-wheel tractor-trailer.  Westfreight contends the evidence

is legally insufficient to support proximate causation.  Cross-appellants maintain the evidence is

factually insufficient to support the jury's attribution of twenty percent of the responsibility for the

accident to Garza.  We affirm the judgment of the trial court.

## BACKGROUND

On the evening of February 20, 2012, Westfreight truck driver Jeffrey Bailey, who was accompanied by Wayne Johnston, delivered equipment to National Oilwell Varco L.P. on Highway 281 North in Alice, Texas. Two driveways connect National's yard to Highway 281. One is marked as an entrance, and the other is marked as an exit. Because they were making an after-hours delivery, Bailey and Johnston called National to make sure the gate would be open for them. National employee Xavier Ramirez met Bailey and Johnston at the entrance gate to unlock it. Bailey pulled the truck in and Ramirez unloaded the equipment with a forklift. As the truck prepared to leave, Ramirez did not unlock the exit gate, although he testified that he offered to do so. Bailey and Johnston testified that Ramirez never offered to open the exit gate.[1] In any event, Bailey chose to back the truck out onto Highway 281 through the entrance gate. Johnston spotted Bailey as he reversed, standing three feet behind the trailer, on the driver's side, as the rig moved backward. Johnston was eventually standing on the double yellow line that separated the northbound lanes of Highway 281 from the center turn lane. When the backing was complete, Bailey moved the rig forward very slowly as Johnston walked to the cab. After Johnston entered the cab, Ramirez stopped them to ask a question about billing paperwork; Johnston testified the conversation only took a couple of seconds.

Bailey then drove the rig forward about 75-111 feet. The truck was still diagonally straddling both northbound lanes, with the rear end of the trailer across the left lane and the rig in the right lane, when Garza's minivan struck the trailer from behind. The left front of the minivan struck the right rear of the trailer. Garza suffered severe injuries, including a partially torn aorta, and died ten to fifteen minutes after the collision.

---

[1] As the driver of the truck, Bailey acknowledged that it was his obligation to ask Ramirez to open the gate.

The accident occurred on a clear night, at approximately 7:42 p.m. The road approaching south of the accident site "is a straight level road." About 800 feet south of the accident site, the speed limit increases from 60 miles per hour to 70 miles per hour. Johnston estimated that he could see a mile down Highway 281 as he was spotting the rig's exit from National's yard. An investigating officer testified that there was nothing obstructing or blocking Garza's vision as she approached the 18-wheeler. Only a small hill about one-half mile south of the accident site changes the road's elevation. Assuming the small hill affected Garza's view of the rig, she still would have traveled one-half mile, or approximately 25-30 seconds at the speed limit, with the rig's lights visible to her before reaching the rig. There was no evidence that Garza was speeding or using her cellphone. She was most likely traveling 40-52 miles per hour at the moment of impact; the truck was traveling 5-10 miles per hour. The minivan left no skid marks.

Garza's sons, John Michael Heuston, individually and as dependent administrator of her estate, and Geronimo Rodriguez, brought wrongful death and survival claims against Westfreight, Bailey, and National. At the close of plaintiffs' case-in-chief, the trial court granted National's motion for directed verdict. The jury found Westfreight[2] and Garza were both negligent, and that the negligence of both proximately caused the accident. The jury apportioned 80 percent responsibility to Westfreight and 20 percent to Garza. The jury found that Heuston sustained $900,000 in damages, that Rodriguez sustained $400,000 in damages, and that Garza's estate sustained $850,000 in damages.

Plaintiffs moved to disregard the jury's negligence finding against Garza and, alternatively, for a new trial. Westfreight moved for judgment notwithstanding the verdict on the entire case and, alternatively, on portions of the damage findings. The trial court denied the post-trial motions.

[2] The jury was instructed that the negligence, if any, of Bailey and Johnston was attributable to Westfreight.

The trial court rendered judgment on the verdict by reducing the jury's damage findings to account for the jury's attribution of 20 percent responsibility to Garza. After adding prejudgment interest, Heuston was awarded $752,347.36, Rodriguez was awarded $334,372.96, and Garza's estate was awarded $741,106.40.

Westfreight timely appealed, and now contends that the evidence is legally insufficient to support proximate causation. Heuston also filed a notice of cross-appeal, and maintains that the jury's apportionment of responsibility is not supported by factually sufficient evidence.

### STANDARDS OF REVIEW

In reviewing the record for legally sufficient evidence, we must view the evidence "in the light most favorable to the verdict, and indulge every reasonable inference that would support it." *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). The evidence is legally sufficient if "more than a scintilla of evidence exists." *Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex. 1993); *Cumpian v. Pan Am. Express, Inc.*, 147 S.W.3d 515, 516-17 (Tex. App.—San Antonio 2004, no pet.). "More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence." *Cumpian*, 147 S.W.3d at 517. "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 770 (Tex. 2010) (quoting *City of Keller*, 168 S.W.3d at 827).

In reviewing a factual sufficiency challenge, we "must consider and weigh all the evidence, and should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

**DISCUSSION**

*Main Appeal*

"The elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach." *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004) (citation omitted). On appeal, Westfreight only challenges the proximate cause element. Proximate cause requires cause-in-fact and foreseeability. *Id.* As with the other elements of a negligence claim, proximate causation must be supported by evidence that goes beyond mere conjecture, guess, or speculation. *Id.* at 798-99. "But a plaintiff is not required to exclude the possibility that the event that caused damage was brought about by some factor other than the defendant's conduct, as long as the plaintiff shows that it is more probable than not that the defendant's conduct was a cause of the injury." *Cowboys Concert Hall-Arlington, Inc. v. Jones*, No. 02-12-00518-CV, 2014 WL 1713472, at *7 (Tex. App.—Fort Worth May 1, 2014, pet. denied) (mem. op.) (citing 1 J. Hadley Edgar, Jr. et al., TEXAS TORTS & REMEDIES § 1.04[2][a] (2013)); *see also El Chico Corp. v. Poole*, 732 S.W.2d 306, 313 (Tex. 1987) (noting that in proving cause-in-fact, plaintiff need not "exclude all possibility that the accident occurred other than how he alleges, but instead must only prove the greater probability is that the defendant's conduct was a cause of the accident").

Cause-in-fact includes a "but-for" element and a "substantial-factor" element: Cause-in-fact is present if the defendant's negligence was a substantial factor in bringing about the plaintiff's injury, without which the harm would not have occurred. *See Rodriguez-Escobar v. Goss*, 392 S.W.3d 109, 113 (Tex. 2013). Cause-in-fact is not established where the actor's negligence does no more than furnish a condition which makes the injuries possible. *IHS Cedars*, 143 S.W.3d at 799. In other words, the actor's conduct may be too attenuated from the resulting injuries to the plaintiff to be a substantial factor in bringing about the harm. *Id.* A defendant's conduct is

considered a substantial factor in causing the event if the conduct had such an effect in producing the harm as to lead reasonable people to regard it as a cause. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 472 (Tex. 1991) (internal citation omitted).

Westfreight essentially argues that its negligence was not a cause-in-fact of the collision because the danger caused by "blindside backing"[3] the 18-wheeler onto Highway 281 had "come to rest" before Garza rear-ended the trailer. To wit, the collision occurred when the rig was moving forward. Westfreight asserts its negligence furnished, at most, a condition that made the collision possible. Westfreight argues:

> The process of backing the rig onto the roadway did not itself cause the collision because that process had already ended. The effect of that process was to put the rig in a position where it was temporarily occupying two northbound lanes while the rig slowly moved forward. . . . The decision to back the rig out of National's yard therefore provided nothing more than a condition that was necessary for the accident to occur.

Westfreight relies on *Bell v. Campbell*, 434 S.W.2d 117 (Tex. 1968), in support of its argument that its negligence was not a cause-in-fact of the collision. In *Bell*, a vehicle pulling a trailer on a highway rear-ended another vehicle. *Id*. at 119. In the accident, the trailer broke off and came to rest on the highway. *Id*. People stopped to help move the trailer off the highway. *Id*. As they were doing so, another vehicle struck three of the people, killing two of them. *Id.* at 118-19. The people struck in the second accident sued the drivers in the first accident. *Id.* at 118. Because the vehicles and unhooked trailer had come to rest before a passing car struck the people helping to move the trailer out of the roadway, the supreme court determined the defendants' negligence was

---

[3] Bailey described the process he used to maneuver the truck that evening as "blindside backing" because the only things he could see as he reversed the rig onto the highway was the side of the trailer in his right-hand mirror and his spotter in his left-hand mirror. Plaintiffs' expert David Stopper testified that when blindside backing, "there's a point in time where you just don't see anything behind you."

not a proximate cause because the forces generated by their negligence had come to rest when the plaintiffs' injuries occurred. *Id*. at 122.

Here, however, the "forces" generated by Westfreight's negligence had not come to rest before the collision occurred. The potential danger created by Westfreight's negligence in backing the truck onto Highway 281 remained active in the form of diagonally blocking both northbound lanes of travel even after the rig began to travel forward. At trial, Bailey testified that at the time of the collision, his tractor, or rig, was on the shoulder and he was merging into the nearest right-hand lane, but he was not sure where his trailer was. He conceded that the trailer could have been in the left-hand lane. Garza's expert, James Lock, testified that the truck was at an angle across both northbound lanes of travel at the time of impact. Lock believed that Garza's minivan began approaching as soon as the spotter left his post and that the impact occurred as the rig began moving forward and the trailer crossed the center line between the two lanes and got half into the right lane and half into the left lane. Garza was traveling in the right lane, and the truck moved from the left lane into her lane of travel. Lock stated that this was not a "rear-end" collision, but rather, an "angle" collision because the rear-end was never in Garza's lane until right at the moment of impact. Plaintiffs' expert David Stopper performed the backing-up maneuver as described by Bailey and Johnston and concluded that it took one minute and 13 seconds to back the truck onto the highway and have the spotter enter the cab. In contrast, pulling out cab-first and turning right would take approximately 11 seconds.

The El Paso Court of Appeals examined a similar scenario in *Homeland Exp., L.L.C. v. Seale*, 420 S.W.3d 145 (Tex. App.—El Paso 2012, no pet.). There, the driver of an 18-wheel tractor-trailer elected to stop his vehicle on the shoulder of Interstate 10 on a dark morning to investigate why the "check engine" light had illuminated. *Id*. at 147. Although the driver attempted to park on the shoulder, a portion of the trailer remained protruding in the right-hand

lane of travel on the highway. *Id*. The driver did not place reflective warning devices behind the rig. *Id*. Ten to fifteen minutes later, the driver of a van clipped the left rear of the 18-wheeler with his right-front bumper, severely injuring a passenger. *Id*. at 147-48. At trial, the plaintiff's accident reconstruction expert testified that, regardless of why the van's driver drove onto the shoulder—whether as a result of having evaded a collision with a pick-up truck that suddenly cut in front of him or having fallen asleep, as alleged by the defendants—the accident would not have occurred had the driver of the 18-wheeler not parked where he had. *Id*. at 148. The jury determined that the driver of the 18-wheeler was negligent and attributed 70 percent of the responsibility for the accident to him. *Id*. On appeal, the defendants challenged the sufficiency of the evidence to support proximate causation. *Id*. The defendants specifically argued, as Westfreight does here, that the 18-wheeler's driver's acts and omissions did "no more than furnish a condition that made the accident possible." *Id*. at 150. The defendants similarly relied on *Bell* in support of their causation argument. *Id*. at 150-51. The El Paso court rejected the defendants' argument and held that the dangerous situation caused by the parking of the 18-wheeler "never abated" and that "the forces generated by [the driver of the 18-wheeler's] conduct had not 'come to rest'" at the time of the collision.[4] *Id*. at 151.

We, too, hold that, based on the evidence presented at trial, the jury could have reasonably concluded that Westfreight's initial negligence in backing the truck at an angle across the highway continued to pose a danger to approaching motorists even after the rig began to move forward. *See id.* at 149-51. The jury could have further determined that the placement of the truck in both

---

[4] Westfreight argues that *Homeland* is not applicable because the driver of the van in that case was able to relate events occurring immediately before the accident. It appears, however, that the driver's observations in that case were disputed. *See Homeland*, 420 S.W.3d at 148. Moreover, Westfreight fails to cite any authority standing for the proposition that in vehicular accidents, there can be no recovery where the deceased driver does not testify as to what she observed prior to the accident.

northbound lanes of travel and the shoulder was a substantial factor in causing the collision and that the collision would not have occurred had Bailey and Johnston not backed the truck onto the darkened highway. Moreover, the jury could have reasonably determined that Bailey should have anticipated that backing an 18-wheeler onto a darkened highway involves an extreme degree of risk that another vehicle might approach. *See Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 929 (Tex. 2015) (proximate causation consists of cause in fact as well as foreseeability); *Doe v. Boys Clubs of Greater Dallas, Inc*., 907 S.W.2d 472, 478 (Tex. 1995) (foreseeability "requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission"). Westfreight's company policy prohibits backing out onto a darkened highway at night. Additionally, experts on both sides agreed that backing out from an entrance driveway is negligent where an exit driveway allowing a truck to pull out rig-forward is also available. In fact, by using a spotter to watch for approaching vehicles, Bailey and Johnston acknowledged the likelihood that a driver such as Garza would approach from the rear. Accordingly, we hold that the evidence is legally sufficient to support the jury's negligence finding as to both cause-in-fact and foreseeability.

We note that evidence was also presented at trial indicating that the rig, which was located in the right lane at the time of impact, was not sufficiently visible to Garza. Although the Westfreight truck was equipped with more lights than were required by federal regulation, and all lights were functioning and illuminated at the time of the collision, testimony was presented that the use of retroreflective tape is also required to enhance visibility. Testimony was presented that the truck's retroreflective tape had not been sufficiently maintained and was corroded due to dirt, snow, and salt, causing it to be less reflective. Additionally, the trailer, which was positioned diagonally across both northbound lanes, would have been difficult to see from Garza's rear approach because safety tape is less reflective when viewed from an angle. Westfreight challenges

the evidence regarding the visibility of the retroreflective tape as conclusory and speculative. We need not decide, however, whether the jury properly considered this evidence, because we have already concluded that the backing of the rig and the protracted diagonal position of the trailer across both northbound lanes at night was a substantial factor in bringing about the collision and Garza's death. In sum, after reviewing the evidence in the light most favorable to the finding, we conclude the evidence presented at trial furnished a reasonable basis for the jury to conclude that Westfreight's negligence proximately caused the collision. *See City of Keller*, 168 S.W.3d at 822; *Cumpian*, 147 S.W.3d at 517. Therefore, the record contains more than a scintilla of evidence in support of the jury's finding on negligence. *See Cumpian*, 147 S.W.3d at 517. Accordingly, Westfreight's sole issue on appeal is overruled.

### *Cross-Appeal*

By way of cross-appeal, Garza complains that the jury's apportionment of responsibility is not supported by factually sufficient evidence. Garza makes no argument to explain why the evidence of apportionment is factually insufficient, other than to claim that both sides challenged the apportionment in post-trial motions.[5] Our own review of the record, however, leads us to conclude that the evidence is factually sufficient to support the jury's negligence finding and apportionment against Garza. The evidence at trial showed that the collision occurred on a clear night. Garza was traveling on a flat and straight road for at least 25-30 seconds as she approached the rig. There was testimony that there was nothing obstructing or blocking Garza's vision as she approached. Ramirez, the only witness to observe the accident, testified that the minivan was coming fast; he assumed 60-70 miles per hour. He could not believe that the minivan hit the truck, and stated that there was plenty of room for the minivan to pass on the left by using the turn lane

---

[5] But, as Westfreight points out in its reply/cross-appellee's brief, the parties' challenges were different. Westfreight never raised a factual sufficiency point in post-trial motions and never requested a new trial.

and two southbound lanes.  Ramirez did not hear the screeching of tires breaking, and the minivan left no skid marks.  Given this testimony, we cannot conclude that the jury's apportionment of twenty percent of the responsibility to Garza was so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust.  *See Cain*, 709 S.W.2d at 176.  We, therefore, overrule Garza's sole issue on cross-appeal.

## CONCLUSION

We affirm the trial court's judgment.

Rebeca C. Martinez, Justice