ACCEPTED
04-014-00494-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
1/30/2015 4:41:33 PM
KEITH HOTTLE
CLERK

NO. 04-014-00494-CV

_____

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
01/30/2015 4:41:33 PM
KEITH E. HOTTLE
Clerk

IN THE FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS

_____

**UNITED PARCEL SERVICE, INC. and ROLAND LEAL**

**Appellants/Cross-Appellees**

**v.**

**ROBERT SCOTT RANKIN, Individually; RACHELLE RANKIN, Individually and as Next Friend for AVERY RANKIN, a Minor; as Next Friend for KARA RANKIN, a Minor; and as Next Friend for SAMUEL RANKIN, a Minor**

**Appellees/Cross-Appellants**

_____

On Appeal from the 224th Judicial District Court, Bexar County, Texas
Honorable Cathy Stryker, Presiding Judge
Trial Court Cause No. 2011-CI-07922

_____

**APPELLEES' BRIEF**

_____

Respectfully submitted,

**Doug Perrin**
State Bar No. 15796520
**J. Mark Perrin**
State Bar No. 24013313
THE PERRIN LAW FIRM
1910 Pacific Avenue, Suite 6050
Dallas, Texas 75201
Phone:        (214) 646-2004
Facsimile:   (214) 646-6117
Email: dougperrin@perrinlaw.org
            markperrin@perrinlaw.org

**Peter Marketos**
State Bar No. 24013101
REESE GORDON MARKETOS
750 N. St. Paul Street, Suite 610
Dallas, Texas 75201
Telephone:  (214) 382-9810
Facsimile: (214) 501-0731
Email: pete.marketos@rgmfirm.com

**Byron Keeling**
State Bar No. 11157980
KEELING & DOWNES, P.C.
1500 McGowen Street
Houston, Texas 77004
Telephone: (832) 214-9900
Fax: (832) 214-9908
Email:  bck@keelingdownes.com

**ATTORNEYS FOR APPELLEES**

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

| | |
|---|---|
| **Appellees/Plaintiffs:** | Scott Rankin |
| | Rachelle Rankin |
| | Avery Rankin |
| | Kara Rankin |
| | Samuel Rankin |

**Trial and Appellate Counsel for Appellees/Plaintiffs:**

**Doug Perrin**
State Bar No. 15796520
**J. Mark Perrin**
State Bar No. 24013313
THE PERRIN LAW FIRM
1910 Pacific Avenue, Suite 6050
Dallas, Texas 75201
Phone:        (214) 646-2004
Facsimile:   (214) 646-6117
Email: dougperrin@perrinlaw.org
                markperrin@perrinlaw.org

**Peter Marketos**
State Bar No. 24013101
REESE GORDON MARKETOS
750 N. St. Paul Street, Suite 610
Dallas, Texas 75201
Telephone:  (214) 382-9810
Facsimile: (214) 501-0731
Email: pete.marketos@rgmfirm.com

**Byron Keeling**
State Bar No. 11157980
KEELING & DOWNES, P.C.
1500 McGowen Street
Houston, Texas 77004
Telephone: (832) 214-9900
Fax: (832) 214-9908
Email:  bck@keelingdownes.com

i

**Appellants/Defendants:**                    United Parcel Service, Inc.
                                              Roland Leal

**Trial and Appellate Counsel for**           **H. Victor Thomas**
**Appellants/Defendants:**                    KING & SPALDING
                                              Texas Bar No. 19851500
                                              1100 Louisiana, Suite 4000
                                              Houston, Texas 77002
                                              Telephone: (713) 751-3200
                                              Facsimile: (713) 751-3290
                                              Email:  Vthomas@KSLAW.com

                                              **W. Randall Bassett**
                                              Georgia Bar No. 41525
                                              **Bradley W. Pratt**
                                              Georgia Bar No. 586672
                                              KING & SPALDING LLP
                                              1180 Peachtree Street, N.E.
                                              Atlanta, Georgia 30309
                                              Telephone: (404) 572-4600
                                              Facsimile: (404) 572-5100
                                              Email:  Rbassett@KSLAW.com
                                                         Bpratt@KSLAW.com

                                              **Ricardo Reyna**
                                              State Bar No. 16794845
                                              **Audrey Haake**
                                              State Bar No. 08658100
                                              BROCK, PERSON, GUERRA, REYNA
                                              17339 Redland Road
                                              San Antonio, Texas 78247
                                              Telephone: (210) 979-0100
                                              Facsimile: (210) 979-7810
                                              Email: rreyna@bpgrlaw.com
                                                        ahaake@bpgrlaw.com

ii

# TABLE OF CONTENTS

**Page**

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

I.     STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . 2

III.   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.   SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     A.     The Trial Court correctly submitted the Rankins'
          negligence per se claim to the jury . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          1.     Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

          2.     Question 1 was properly submitted to the jury . . . . . . . . . . . . . 11

               a.     Question 1 tracks Texas case law and the
                      Texas Pattern Jury Charge . . . . . . . . . . . . . . . . . . . . . . . 12

               b.     Question 1 is a question of fact, not a question of law . . 14

          3.     Words used in their ordinary meaning do not
              need to be defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

          4.     UPS has waived this point of error and/or is barred
              from raising it under the doctrine of invited error . . . . . . . . . . 16

               a.     UPS invited error on the submission of Question 1 . . . . 16

b. UPS waived its argument, or invited error, as to the trial court not defining words in the statute for the jury . . . . . . . . . . . . . . . . . . . . . . . . . .16

5. Any error is harmless because the jury's answer to Question 1 is supported by the evidence and is correct under Texas law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

B. The evidence is legally and factually sufficient to support the jury's verdict on their negligence per se claim . . . . . . . . . . . . . . . .25

1. "Residences" refers only to the residences on the property . . . . 25

2. The evidence is more than sufficient to support the jury's finding that 109 Ranger Creek Road is outside a residence district . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

3. In the alternative, even if the Trial Court erred in submitting the Rankins' negligence per se claim to the jury, it is not reversible error . . . . . . . . . . . . . . . . . . . . . . . 29

C. The Trial Court correctly admitted the Affidavit of Lori Carroll and correctly excluded portions of the testimony of Sergeant Allison and Megan McGehee . . . . . . . . . . . . . . . . . . . . . . . 32

1. The Affidavit of Lori Carroll was not hearsay and was properly admitted . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

2. The excluded testimony of Sergeant Allison was irrelevant and without any basis in law or fact, and was properly excluded . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

3. The excluded testimony of Megan McGehee was irrelevant and duplicative, and was properly excluded . . . . . . . 40

D. The Rankins' counsel made no judicial admission during closing argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .41

E.     The evidence is legally and factually sufficient to support
        the jury's verdict that the negligence of UPS's driver,
        Roland Leal, proximately caused the occurrence . . . . . . . . . . . . . . . . . . 43

F.     The jury's verdict that Scott Rankin was 50% responsible
        is the consummate jury question and is supported by
        legally and factually sufficient evidence . . . . . . . . . . . . . . . . . . . . . . . .53

G.     The Trial Court correctly denied UPS's Motion for Directed
        Verdict and correctly refused to instruct the jury regarding the
        alleged effect of compliance with applicable parking laws . . . . . . . . 54

VI.    PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

CERTIFICATE OF COMPLIANCE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

# INDEX OF AUTHORITIES

**Page(s)**

**CASES:**

**Texas Cases**

*Ambrosio v. Carter's Shooting Ctr., Inc.,*
20 S.W.3d 262 (Tex. App.-Houston [14th District] 2000 pet. denied) . . 50, 51

*Bell v. Campbell,*
434 S.W.2d 117 (Tex. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50, 52, 53

*Bluestar Energy, Inc. v. Murphy,*
205 S.W.3d 96 (Tex. App.-Eastland 2006, pet. denied) . . . . . . . .16, 18, 27, 44

*Borden, Inc. v. Price*,
939 S.W.2d 247 (Tex. App.-Amarillo 1997, writ denied) . . . . . . . . . . . . . . . 12

*Brandywood Hous., Ltd. v. Texas Dep't of Transp.,*
74 S.W.3d 421 (Tex. App.-Houston [1st Dist.] 2001, pet. denied) . . 17, 18, 27

*Brune v. Brown Forman Corp.*
758 S.W.2d 827 (Tex. App.-Corpus Christi 1988, writ denied) . . . . . . . . . . .20

*Callahan v. Vitesse Aviation Servs., LLC*,
397 S.W.3d 342 (Tex. App.-Dallas 2013, no pet.) . . . . . . . . . . . . . . . . . . . . 12

*Carter v. William Sommerville and Son, Inc.,*
584 S.W.2d 274 (Tex. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Castleberry v. Branscum*,
721 S.W.2d 270 (Tex. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*City of Keller v. Wilson*,
168 S.W.3d 802 (Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

*City of Rockwall v. Hughes*,
246 S.W.3d 621 (Tex. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Clark v. Waggoner*,
452 S.W.2d 437 (Tex. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .44

*Eagle Trucking Co. v. Texas Bitulithic Co.*,
612 S.W.2d 503 (Tex. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Exxon Pipeline Co. v. Zwahr*,
88 S.W.3d 623 (Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Grohman v. Kahlig*,
318 S.W.3d 882 (Tex. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Helena Chem. Co. v. Wilkins*,
47 S.W.3d 486 (Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Homeland Express, LLC v. Seale*,
420 S.W.3d 145 (Tex. App. - El Paso 2012, no writ) . . . . . . . . . . . . . . 44, 52

*Larson v. Cactus Util. Co.*,
730 S.W.2d 640 (Tex. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .53

*Lawrence v. City of Wichita Falls*,
122 S.W.3d 322 (Tex. App. - Fort Worth 2003, pet. denied) . . . . . . . . . . . . . 46

*Lear Siegler, Inc. v. Perez*,
819 S.W.2d 470 (Tex. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50, 52, 53

*Montes v. Pendergrass*,
61 S.W.3d 505 (Tex. App. - San Antonio 2001, no pet.) . . . . . . . . . . . . 46, 47

*Mooneyhan v. Benedict*,
284 S.W.2d 741 (Tex. App.-Austin 1955, no writ) . . . . . . . . . . . . . . . . . . 28

*Moore v. Brunswick Bowling & Billiards Corp.*,
853 S.W.2d 842 (Tex. App.-Houston [1st Dist.] 1993),
*rev'd on other grounds*, 889 S.W.2d 246 (Tex. 1994). . . . . . . . . . . . . . . . . 55

*Moughon v. Wolf,*
        576 S.W.2d 603 (Tex. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13

*Nixon v. Mr. Prop. Mgmt.,*
        690 S.W.2d 546 (Tex. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Operation Rescue-National v. Planned Parenthood of Houston,*
        975 S.W.2d 546 (Tex. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Owens Corning v. Carter,*
        997 S.W.2d 560 (Tex. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 24

*Perry v. S.N.,*
        973 S.W.2d 301 (Tex. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Pool v. Ford Motor Co.,*
        715 S.W.2d 629 (Tex. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Rodriguez v. Moerbe,*
        963 S.W.2d 808 (Tex. App. - San Antonio 1998). . . . . . . . . . . . . . . . . . 44, 48

*Romero v. KPH Consolidation, Inc.,*
        166 S.W.3d 212 (Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31, 32

*Saenz v. David & David Constr. Co.,*
        52 S.W.3d 807 (Tex. App.—San Antonio 2001, pet. denied) . . . . . . . . . . . . .11

*Southwestern Bell Tel. Co. v. Hertz Equip. Rental Co.,*
        533 S.W.2d 853 (Tex. App. - Fort Worth 1976, writ ref'd n.r.e.) . . . . . . . . . 49

*Spradlin v. State,*
        100 S.W.3d 372 (Tex. App.-Houston [1st Dist.] 2002, no pet.) . . . . . . . . . . .41

*Strother v. City of Rockwall,*
        358 S.W.2d 462 (Tex. App.-Dallas 2012, no pet.) . . . . . . . . . . . . . . . . . . . .35

*Texaco, Inc. v. Pennzoil Co.,*
        729 S.W.2d 768 (Tex. App.-Houston [1st Dist.] 1987, writ ref'd n.r.e.) . . . . 15

*Texas Mut. Ins. Co. v. Morris*,
      287 S.W.3d 401 (Tex. App.-Houston [14th Dist.] 2009),
      *rev'd on other grounds*, 383 S.W.3d 146 (Tex. 2012). . . . . . . . . . . . . . . . . 32

*Travis v. City of Mesquite*,
      830 S.W.2d 94 (Tex. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Turner v. Cruz*,
      2010 Tex. App. LEXIS 10216
      (Tex. App.-San Antonio Dec. 29, 2010, no pet.) . . . . . . . . . . . . . . . . . . . . . .49

*Union Pump Co. v. Allbritton,*
      898 S.W.2d 773 (Tex. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 47, 50, 51, 52, 53

*Waste Mgmt. of Tex. Inc. v. Texas Disposal Sys. Landfill, Inc.*,
      434 S.W.3d 142 (Tex. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 36, 40

**Out-of-State Cases:**
*Baker v. Court of Special Sessions,*
      15 A.2d 102 (N.J. 1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*Bowling Green-Hopkinsville Bus Co. v. Adams*,
      261 S.W.2d 14 (Ky. 1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
*Gordon v. Cozart*,
      110 So.2d 75 (Fla. App. 1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Marshall v. Mullin*,
      320 P.2d 258 (Ore. 1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

*McGill v. Baumgart*,
      288 N.W. 799 (Wis. 1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

*Minton v. Gobble*,
      304 S.W.2d 337 (Tenn. App. 1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*State v. Bastian*,
      78 N.J. Super. 49 (Cty. Ct. 1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*State v. Mundy*,
    273 A.2d 620 (N.J. County Ct. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*State v. Zeus*,
    56 N.J. Super. 323 (Cty. Ct. 1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Thoms v. Dowdy,*
    112 S.E.2d 868 (Va. 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## STATUTES, RULES & OTHER AUTHORITIES

TEX. PROP. CODE. ANN. § 27.001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

TEX. PROP. CODE. ANN. § 27.0042 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23, 24

TEX. TAX CODE. ANN. § 11.13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

TEX. TRANSP. CODE § 541.102. . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20 25, 33, 37

TEX. TRANSP. CODE § 545.301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 20

TEX. R. APP. P. 33.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

TEX. R. APP. P. 39.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

TEX. R. APP. P. 44.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 40, 41

TEX. R. CIV. P. 166a(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

TEX. R. CIV. P. 278 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 30

TEX. R. EVID. 401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39, 41

TEX. R. EVID. 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39, 41

TEX. R. EVID. 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

TEX. R. EVID. 703 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

TEX. R. EVID. 803(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 33, 34

BLACK'S LAW DICTIONARY 907 (abridged 6th ed. 1991) . . . . . . . . . . . . . . . . . . . . . . .24

MERRIAM-WEBSTER'S DICTIONARY AND THESAURUS 824 (2006) . . . . . . . . . . . . . 20

Restatement (Second), Torts, § 288c . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54, 55

Texas Pattern Jury Charge 5.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

**TO THE HONORABLE COURT:**

COME NOW, Appellees, Robert Scott Rankin, individually, Rachelle Rankin, individually and as next friend for Avery Rankin, a minor, as next friend for Kara Rankin, a minor, and as next friend for Samuel Rankin, a minor, (collectively referred to as "the Rankins") in the above-styled and numbered cause, and file this Appellees' Brief and in support thereof would respectfully show as follows:

## I. **STATEMENT OF THE CASE**

Nature of case:     This is a suit for damages arising out of a collision between Robert Scott Rankin ("Mr. Rankin"), who was riding a bicycle, and a United Parcel Service, Inc. ("UPS") truck driven by Roland Leal ("Mr. Leal") (collectively referred to herein as "UPS"). (CR1:101). The collision took place on a rural road outside of Boerne, Texas and resulted in devastating injuries to Mr. Rankin, including permanent incomplete quadriplegia. (CR1:101-104; RR8:15-18). Mr. Rankin and his wife, Rachelle, have three beautiful, young children who were seven, four, and fifteen months at the time of this accident. (RR6:10-11). Mr. Rankin was a successful band director and designer of band halftime shows – a job he will never be able to do again. (RR6:148-155). He will never again be able to be the same husband to his wife, and he will never again be able to play with his children the way a man his age ought to be able to play with children the ages of Avery, Kara, and Samuel. (RR6:39-41, 187).

Proceedings:     The case was tried to a jury in the 224th Judicial District Court in Bexar County, Texas. The jury was charged on the Rankins' causes of action for negligence per se, based on evidence that the truck was stopped, parked, or standing partially on the roadway outside a residence district at the time of the collision in violation of the Texas Transportation Code, and general negligence, because of evidence Mr. Leal breached his duty of ordinary care. (CR2:191-206). The jury, after deliberating over all or part of five different days, returned a verdict finding that Mr. Leal was

negligent and negligent per se, awarding $9,361,000.00 to the Rankins, subject to a proportionate responsibility finding that Mr. Rankin was 50% responsible for the collision. (CR2:191-206). UPS stipulated to its vicarious liability for the acts and omissions of Mr. Leal. (CR1:3; RR10:10-11). UPS also stipulated to the proper amount of the bulk of the Rankins' damages. (RR8:83). On April 16, 2014, the trial court entered a Final Judgment in favor of the Rankins in the amount of $5,509,230.33. (CR2:247-251). The Final Judgment included an award of $685,620.50 in attorneys' fees, to which the Rankins were entitled pursuant to the offer of settlement provisions in the Texas Civil Practice and Remedies Code and the Texas Rules of Civil Procedure. (CR2:249).

## II. **STATEMENT REGARDING ORAL ARGUMENT**

Pursuant to Texas Rule of Appellate Procedure 39.1, Appellees request oral argument and submit that it would materially aid the decisional process in this case.

## III. **STATEMENT OF FACTS**

On July 15, 2009, Mr. Rankin was riding his bicycle on Ranger Creek Road in Kendall County, Texas when he collided with a UPS truck illegally stopped, parked, or standing in the roadway. (CR2:194-196). Mr. Rankin was an experienced bicycle rider who testified as to his pattern and practice when riding and his experience in the Texas heat.[1] (RR6:155-159, 163-164, 170-173). Mr. Rankin had

---

[1] Unfortunately, due to the devastating injuries suffered by Mr. Rankin in the collision, he does not have any memory of the events immediately preceding the collision, the collision itself, or the events immediately following the collision. (RR6:167, 174-177).

often taken the very route he took on July 15, 2009, and he was very familiar with it. (RR6:162-163, 166).

Mr. Rankin had taken a shorter bicycle ride earlier in the day, but did not feel he was physically impaired in any way when he departed on his fateful second ride on July 15, 2009.[2] (RR6:198). Appellants' Brief argues that "[a]ccording to Mrs. Rankin, when her husband returned home from his first ride, he experienced heat exhaustion and actually vomited."[3] (Appellants' Brief at 20.) This is, at best, a serious mischaracterization of the evidence at trial. The woman who lived at 109 Ranger Creek Road, Megan McGehee, testified in a portion of her deposition that was played for the jury that she remembered Mrs. Rankin saying that to her in a telephone call sometime after the accident. (RR8:160-161). Mrs. Rankin specifically and explicitly denied that Mr. Rankin vomited on July 15, 2009 and denied making any such statement to Ms. McGehee. (RR6:48, 58, 116). In addition, one of UPS's experts who examined the medical records of Mr. Rankin, including diagnostic imaging of his brain, testified that there was no medical evidence in those records of any heat exhaustion or heat stroke. (RR8:246-247).

---

[2] Mr. Rankin did not even consider his first excursion on a bike that day a ride, referring to is as an "errand." (RR6:155).

[3] UPS also makes reference to Mr. Rankin lying down in the entryway of the Rankins' home when he returned home from his first ride. Mr. Rankin explained that was something he learned in drum corps as a way to quickly bring down his body temperature and regulate his heart rate, as opposed to some evidence of a dramatic event. (RR6:164-165).

Mr. Leal was an employee of UPS who was operating the UPS truck and making a delivery to the residence located at 109 Ranger Creek Road for his employer. (RR5:46-47). UPS contends that the view of the truck was unobstructed for more than 2,000 feet, but the jury saw video and photographic evidence and heard testimony to the contrary.[4] (RR5:167-70, RR6:171-173; RR13:15-23 (Plaintiffs' Exhibits 1AA-1EE), 29 (Plaintiffs' Exhibit 1HH), 47 (Plaintiffs' Exhibit 1T), 56 (Plaintiffs' Exhibit 1Z); Plaintiffs' Exhibits 22 & 29 (admitted for demonstrative purposes); RR18:91-94 (Defendants' Exhibits 144E-144H)). What the jury saw was a brown truck under a brown tree near brown grass with a brown hill framing the background. (RR.18:91-94). According to his testimony, Mr. Leal left the UPS truck parked in the main-traveled portion of the roadway where it was blocking part of the eastbound traffic lane while he exited the vehicle to make his delivery. (RR5:62-63).[5]

At trial, the jury heard at least six different versions of how the incident occurred according to Mr. Leal. In some versions he was in the truck when the

---

[4] The truck shown in UPS's pictures is not the truck that was involved in the accident. UPS never photographed or produced for inspection the truck involved in the accident, going so far as to not even allow its own experts to view it despite the fact that it was located in the San Antonio facility the entire time. (RR8:233-234; RR9:16-17, 30-34, 157-158. The Rankins seriously doubt the truck involved in the accident had the metal strip on the back shown in the pictures, and there was no evidence introduced that it did. The vast majority of UPS trucks do not.

[5] Mr. Leal testified that the difference between an "incident," for which he would not receive any punishment, and an "accident," for which he would, was whether his UPS truck was in motion. (RR5:68-69).

collision occurred, and in some versions he was not. (RR5:64-68, 69-73, 73-77, 89-90). In some versions the key was in the ignition when the collision occurred, and in some versions it was not. (RR5:73-77, 89-90). In some versions the truck was running, and in some versions it was not. (RR5:86-87, 89-90). In some versions he first saw Mr. Rankin when he walked to the back of the truck, and in some he first saw Mr. Rankin in the truck's rear view camera. (RR5:69-73, 89-90). In one version Mr. Leal pulled the truck forward before seeing Mr. Rankin lying crumpled behind him. (RR6:125-126). In some versions Mr. Leal initially thought that the sound of Mr. Rankin colliding with the truck was the sound of the transmission falling out of his truck. (RR5:85-87, 89-90).

Mr. Leal had several options to park the UPS truck off the roadway and in a safe manner. (RR5:224-228, 265-266; RR13:18, 26, 39, 45, 54, 147). In an early deposition, Mr. Leal testified that he never parked in the driveway at 109 Ranger Creek Road when making deliveries there. (RR5:104-106). After the owner of the house at the time of this incident testified that Mr. Leal did, in fact, park in the driveway from time to time, Mr. Leal conceded at trial that the earlier testimony was incorrect and that he had done so in the past. (RR5:106-108). Mr. Leal agreed at trial that parking the truck off of the roadway was practical, and that he physically could have done so. (RR5:96-98, 175). He chose, however, to leave the vehicle in the roadway, either while he made his delivery or after making it while leaving the

location in which he parked. The location of the truck at the time law enforcement arrived is known because the location of the tires was marked with spray paint on the highway by them. (RR5:100-101, 221-224; RR8:133). Mr. Leal's testimony as to why he chose that spot was that it was the fastest spot with the most direct line to the front door of 109 Ranger Creek Road, and it was the spot that best protected his truck from damage.[6] (RR5:101, 104, 108-109). Mr. Leal acknowledged that the safer place to be as to other users of the roadway, as opposed to UPS's property, was entirely off the roadway. (RR5:104, 175-176).

The facts at the trial of this case were hotly contested and heavily disputed, but four vital facts were not: (1) the UPS truck was located partially on the main traveled portion of a roadway with a speed limit of 45 miles per hour when Mr. Rankin collided with it (RR5:59-60, 62-63); (2) Mr. Rankin was riding his bicycle on the roadway when the collision occurred (RR5:88); (3) the collision would not have occurred if the UPS truck had not been located on the main-traveled portion of the roadway (RR9:155-156); and (4) the collision caused Mr. Rankin's catastrophic and permanent spinal cord injury, resulting in permanent incomplete quadriplegia (RR8:15-17). The jury, after serious and deliberate consideration over parts or all of five days, combed through the evidence, decided which portions to believe and

---

[6] Mr. Leal testified that if his truck was damaged during his route it was his responsibility. (RR5:109). Mr. Leal and UPS's corporate representative further testified that a UPS driver can be punished if his deliveries take too long, potentially including termination. (RR5:35; RR7:22).

disbelieve, and ultimately entered a verdict that Mr. Leal was negligent and negligent per se and that Mr. Leal and Mr. Rankin were both 50% responsible for the incident. (CR2:191-206).

## IV.  <u>SUMMARY OF ARGUMENT</u>

The Honorable Cathy Stryker conducted a fair, unbiased trial.  Each side was permitted to present its proper evidence and argue its side vigorously.  The trial court excluded proffered evidence and testimony from both sides.  The jury heard and saw significant amounts of conflicting evidence.  UPS's Brief seems to contend that the evidence cited by it was the only evidence heard or seen by the jury, but that is not the case.  The jury considered all the evidence it had received, determined what evidence was credible and what evidence was not, and entered a reasonable verdict. The Rankins understand that UPS is surprised and disappointed that it lost.  But UPS has presented this Court with no reversible error.  The parties were allowed an imminently fair trial, the jury did its job with incredible seriousness and determination, and the verdict and judgment are well-supported by the evidence and Texas law.  The civil justice system worked exactly as it is supposed to work.  This Court should not disturb the verdict or judgment and the result at the trial court must be affirmed.

The determination of whether the UPS truck was located outside a "residence district" required the jury to resolve multiple questions of fact, and it was therefore

properly submitted to the jury. The submission of Question 1 to the jury on that issue is consistent with decades of Texas case law and tracked the Texas Pattern Jury Charge. The jury's answer to Question 1, that the UPS truck was outside a "residence district" at the time of the accident, was correct and is supported by the evidence admitted at trial and Texas law. Among other pieces of evidence, Mr. Leal himself admitted that the area around 109 Ranger Creek Road was a "country road," that 109 Ranger Creek Road did not have a "real close by" next door neighbor, and that at the time of the accident there was not much development around 109 Ranger Creek Road. UPS's own report referred to the area as "rural." Moreover, not only did UPS not request the trial court to do what it now claims the trial court should have done, it actively argued against the trial court doing so.

The jury's finding on proportionate responsibility cannot be disturbed on appeal, whether or not the Rankins' negligence per se questions were properly submitted to the jury. The jury found that both Mr. Leal and Mr. Rankin were negligent and, therefore, each bore responsibility for the accident. Whether viewed through the prism of negligence per se or negligence, the negligent acts committed by him are the same. The jury was not piling one act on top of another or considering different levels of intent in reaching its proportionate responsibility finding. The jury determined who bore what portion of responsibility for the accident based on negligence. That determination is uniquely a jury function and must be affirmed.

The trial court's evidentiary rulings were correct. The Affidavit of Lori Carroll explicitly falls within Texas Rule of Evidence 803(8), states within its body the fact UPS wanted to convey to the jury, and cannot reasonably be questioned as to accuracy. The excluded testimony of Sergeant Allison was pure speculation without any basis in fact or law, as admitted by him, and Sergeant Allison was not qualified to testify on the topic that was excluded. But in any event, UPS was able to introduce evidence that contained equivalent information to the testimony that was excluded. The excluded testimony of Megan McGehee was duplicative of other evidence before the jury, and sought to re-establish a previously established fact that was not disputed by anyone in the lawsuit. That testimony was entirely irrelevant and duplicative and its exclusion was not error.

The Rankins' counsel argued in the alternative the jury. This is and always has been allowed in Texas, and can in no way constitute a judicial admission.

Determination of proximate cause is uniquely an issue for the jury. The trial court, who heard and saw all of the evidence in the case, obviously did not agree that the evidence was insufficient, as the trial court submitted the issue to the jury and overruled UPS's motion for new trial. Contrary to UPS's implication, there was significant evidence that conflicted with UPS's version of events. UPS's witnesses agreed that the accident would not have occurred had the UPS truck been entirely off the roadway as required, there was conflicting evidence on when or how Mr.

Rankin should have seen the truck, and there was significant evidence to support foreseeability. The jury determined which evidence was credible and probative, and which was not, and determined that fact issue based on its deliberations.

Determination of proportionate responsibility is the consummate fact question for the jury. UPS again invites this Court to substitute its judgment for that of the jury, which this Court cannot do. The jury heard all of the conflicting evidence and determined that Mr. Leal and Mr. Rankin were each 50% responsible. That finding is reasonable and supported by the evidence and, therefore, must be affirmed.

## V. **ARGUMENT**

### A. **The Trial Court correctly submitted the Rankins' negligence per se claim to the jury.**

UPS argues that the trial court erred in submitting Question 1 to the jury. Question 1 asked the jury to decide if the UPS truck was stopped, parked, or standing outside of a "residence district" at the time of the accident, and gave the statutory definition of a "residence district." (CR2:194). According to UPS, the trial court should have "construed the statute, and determined whether 109 Ranger Creek Road was within a 'residence district.'" (Appellants' Brief at 32). UPS assigns error to the trial court for failing to provide the jury with "definitions for the most significant terms in the statute." (Appellants' Brief at 29). UPS's argument lacks merit. The trial court's determination to submit Question 1 to the jury was correct, the jury's answer to Question 1 is supported by the evidence, the trial court did not need to

define terms used in their ordinary meaning, the jury's answer to Question 1 is correct under Texas law, and UPS has waived its argument and is barred from raising it under the doctrine of invited error.

### 1. Standard of Review

As an initial matter, UPS contends that the standard of review for this Court is *de novo*. The case cited by UPS, however, has nothing to do with a trial court's submission of a question to the jury, but rather with whether a trial court correctly construed a statute. *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). As with every other case dealing with a trial court's determination as to the contents of a jury charge, UPS's point of error is properly reviewed under an abuse of discretion standard, not *de novo*. *See, e.g., Saenz v. David & David Constr. Co.*, 52 S.W.3d 807, 809 (Tex. App.—San Antonio 2001, pet. denied). Therefore, UPS's point of error can be sustained only if it shows that the trial court acted arbitrarily or without reference to any guiding principles. *Id.* UPS has not done so.

### 2. Question 1 was properly submitted to the jury.

Negligence per se is the tort concept by which civil courts adopt a legislatively defined standard of conduct as the conduct of a reasonably prudent person. *See Moughon v. Wolf*, 576 S.W.2d 603, 604 (Tex. 1978). To prevail on a negligence per se claim, a plaintiff must show that the defendant's conduct violated the applicable standard of conduct and was a proximate cause of the plaintiff's injuries. *See id.*;

*Nixon v. Mr. Prop. Mgmt.*, 690 S.W.2d 546, 549 (Tex. 1985). As the Texas Supreme

Court has noted, "the overwhelming majority of this Court's negligence per se cases

have involved violations of traffic statutes by drivers and train operators." *Perry v.*

*S.N.*, 973 S.W.2d 301, 306 (Tex. 1998).

        **a.**      **Question 1 tracks Texas case law and the Texas Pattern Jury Charge.**

Whether UPS committed an unexcused violation of Section 545.301 of the

Texas Transportation Code and whether the statutory violation, if any, was a

proximate cause of the Rankins' injuries and damages were questions of fact for the

jury. Such questions have always been submitted to juries in Texas. *See, e.g., Carter*

*v. William Sommerville and Son, Inc.,* 584 S.W.2d 274, 278 (Tex. 1979); *Moughon*

*v. Wolf*, 576 S.W.2d 603, 604 & n.3 (Tex. 1978); *Callahan v. Vitesse Aviation*

*Services*, *LLC*, 397 S.W.3d 342, 356-57 (Tex. App.—Dallas 2013, no pet.); *Borden,*

*Inc. v. Price,* 939 S.W.2d 247, 250 (Tex. App.—Amarillo 1997, writ denied). In the

context of a negligence per se claim arising from an alleged violation of a traffic

statute, the Texas Supreme Court stated in 1978 that "[t]he typical submission of

such a case includes an issue inquiring whether the party charged is actually guilty

of legislatively proscribed conduct along with an issue inquiring whether the

violative conduct was the proximate cause of the accident." *Moughon v. Wolf*, 576

S.W.2d 603, 604 (Tex. 1978).

The Texas Pattern Jury Charge likewise makes it clear that the trial court correctly submitted Question 1 to the jury. Pattern Jury Charge 5.1 is to be used in situations in which general negligence and negligence per se are alleged. As instructed in the comments to PJC 5.1, in situations in which there is "genuine uncertainty whether the violation constitutes negligence per se . . . it would be better to submit both a separate question asking if the statutory conduct was committed and a broad-form question accompanied by an instruction that excludes consideration of the statutory conduct." PJC 5.1 cmt ("If uncertain whether violation is negligence per se"). That is exactly what was done here.

In Question 1, the jury was asked if the statutory conduct was committed, *i.e.*, if the truck was stopped, parked, or standing outside a residence district at the time of the accident.[7] (CR2:194). As directed by the Texas Supreme Court and the Texas Pattern Jury Charge, this question asked the jury if the statutory conduct had been committed. *Moughon*, 576 S.W.2d at 604; PJC 5.1, cmt ("If uncertain whether violation is negligence per se"). Question 2 then set forth the defenses to the statutory conduct and inquired as to negligence and proximate cause as to both Mr. Leal and Mr. Rankin. (CR2:195). Question 3 was the broad-form question on

---

[7] There was no need to ask the jury whether the truck was "on the main traveled part of the highway" as that fact was not disputed and UPS does not complain of that omission. *See* TEX. TRANSP. CODE ANN. § 545.301(a).

general negligence with an instruction that excluded consideration of the statutory conduct. (CR2:195); PJC 5.1, cmt ("If uncertain whether violation is negligence per se"). Negligence and negligence per se were properly submitted to the jury in accordance with longstanding Texas jurisprudence and the Texas Pattern Jury Charge.

### b. Question 1 is a question of fact, not a question of law.

UPS contends that Question 1 was a pure question of law and that, therefore, Question 1 was improperly submitted to the jury.[8] That is simply not correct. The jury had to resolve whether 109 Ranger Creek Road was "outside a residence district"—*i.e.*, not in a residence district. A court may not take judicial notice of whether a highway lies inside or outside a residence district. *See Eagle Trucking Co. v. Texas Bitulithic Co.*, 612 S.W.2d 503, 506 (Tex. 1981) (considering prior version). Because a court may not resolve that question by judicial notice, the trial court here did not err in submitting that question to the jury to resolve any dispute of fact as to whether 300 feet of the highway frontage was primarily improved with residences or buildings used for business purposes and residences. The jury, based on the evidence before it, reasonably determined that the section of Ranger Creek Road in question is outside a residence district.

---

[8] At trial the thrust of UPS's argument was that Question 1 should not be submitted because the evidence was uncontroverted and that, therefore, it was a question of law for the Court. (CR2:145). On appeal, that argument has morphed into an argument that Question 1 is a purely legal issue.

In addition, the jury had to decide whether the truck was "stopped, parked, or standing" at the time of the incident in order to answer Question 1. (CR2:195). The Rankins suggested to the jury as one alternative basis for recovery that the truck could have been in motion at the time of the collision. Whether Mr. Leal was parked the entire time, had been in motion just prior to the collision and was stopped at the time of the collision before transitioning to move forward, or was in motion at the time of the collision was a disputed fact. Question 1 required the jury to resolve these disputed facts based on the evidence before it and as such was a question of fact properly submitted to the jury. *See, e.g., Castleberry v. Branscum*, 721 S.W.2d 270, 277 (Tex. 1986). Absent extraordinary circumstances, fact questions are to be decided by the jury, as they were here. *Id.*

### 3. Words used in their ordinary meaning do not need to be defined.

On appeal, UPS argues that the trial court's failure to instruct the jury on the meaning of "residence," "highway frontage," "adjacent to," "primarily improved," and other terms in the statute was error. This is incorrect, as a trial court need not define terms that are used in their ordinary meaning. *See, e.g., Texaco, Inc. v. Pennzoil Co.*, 729 S.W.2d 768, 814 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.) (jurors are presumed to have average intelligence so that the court "is not required to convert the charge into a dictionary."). In these sections of the Texas Transportation Code, the Legislature saw fit to define some terms and to not define

others.  The only conclusion that can be drawn from that is that the undefined terms are used in their ordinary meaning.  *Owens Corning v. Carter*, 997 S.W.2d 560, 571 (Tex. 1999).  As such, the trial court did not err in failing to define the terms.

**4.    UPS has waived this point of error and/or is barred from raising it under the doctrine of invited error.**

**a.    UPS invited error on the submission of Question 1.**

During argument regarding submission of the Rankins' negligence per se cause of action to the jury, counsel for UPS stated that "if they want to argue to the jury in closing that the statute should be interpreted their way, they are free to do that under the statutory definitions, and we're free to argue our interpretation of the statute."  (RR10:18).  That observation is correct.  For UPS to now contradict its unequivocal statement at the charge conference would constitute invited error.  *See Bluestar Energy, Inc. v. Murphy*, 205 S.W.3d 96, 100-102 (Tex. App.—Eastland 2006, pet. denied) (party who agrees to something at charge conference cannot later object to submission of that issue to the jury).

**b.    UPS waived its argument, or invited error, as to the trial court not defining words in the statute for the jury.**

UPS further argues that the trial court's failure to submit definitions to the jury of the operative terms in the statute was error.  First, this error has not been preserved for appeal because UPS did not submit any such definitions to the trial court.  Texas Rule of Civil Procedure 278 is unequivocal that "[f]ailure to submit a

definition or instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment." TEX. R. CIV. P. 278. UPS did not request any of the definitions or instructions whose omission it now assigns as error and, therefore, the lack of definitions cannot be grounds for reversal.

Second, compounding UPS's failure to preserve this error are the unequivocal statements made by its counsel during the charge conference. As referenced above, the Rankins requested that the trial court include in the jury charge a definition of "residence" taken from a 1999 Texas Supreme Court opinion. UPS objected to the inclusion of the definition and told the trial court that "the safe course is just to not add any additional definitions that are not in the statute." (RR10:16). Not only did UPS object to the inclusion of a definition of a word it now claims should have been defined, it actively asked the court to *not* define that word or any other word that was not defined in the statute. This is classic invited error, and UPS cannot now complain about the lack of definitions in the jury charge. *See Brandywood Housing, Ltd. v. Texas Dep't of Transp.*, 74 S.W.3d 421, 425 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (party who objected to inclusion of an issue from a jury charge could not later argue that the issue should have been included).

UPS further contends that the questions sent back to the trial court by the jury during its deliberations evidence "confusion" and that the trial court erred in failing

to answer those questions to provide guidance to the jury.[9]  (Appellants' Brief at 30-31).  As happens in many jury trial, when the jury sent out a question during its deliberations, the trial court conferred with counsel for all parties before responding.  (RR11:4-6).  UPS never objected to the manner in which the trial court responded to those questions and UPS never asked the trial court to define any terms or otherwise provide additional guidance to the jury.  *Id.*  UPS cannot be allowed to agree with the manner in which the trial court responded to the jury's questions during deliberations and then complain about it after the jury returns its verdict.  This argument has been waived and is barred by the doctrine of invited error.  *See Bluestar Energy, Inc. v. Murphy*, 205 S.W.3d 96, 100-102 (Tex. App.—Eastland 2006, pet. denied); *Brandywood Housing, Ltd. v. Texas Dep't of Transp.*, 74 S.W.3d 421, 425 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).

## 5. Any error is harmless because the jury's answer to Question 1 is supported by the evidence and is correct under Texas law.

Even if UPS is correct that the trial court should have determined UPS's negligence per se as a matter of law, the jury's answer to Question 1 does not rise to the level of harmful error.  TEX. R. APP. P. 44.1.  The jury deliberated, obviously working hard to do its job, and got it right.

---

[9] The Rankins disagree that the questions from the jury evidence confusion.  Rather, the jury wanted to know if it was required to apply some particular definition to answer the question of fact, and when the trial court told it to apply the ordinary meanings of the words it went to work doing so to answer the questions of fact presented to it.

UPS contend that focusing on the structure rather than the entire lot leads to absurd results, but none of the parade of horribles set forth by UPS pose real concerns. Rather, it is UPS's interpretation that leads to absurd results. The home at 109 Ranger Creek Road is not part of a subdivision. It is on an eight acre tract. (RR17:5 (Plaintiffs' Exhibit 26)). Other homes on Ranger Creek Road are on similarly large tracts. *Id.* By any reasonable interpretation, Ranger Creek Road is a rural highway, not a residential road.[10] A court should give statutes their plain meaning; the plain meaning of Section 541.102(2), necessarily refer to the residences themselves, not to the property on which they sit. Under UPS's interpretation, if there were two houses on the entire 350,000 acre 6666 Ranch in King County, Texas, it would qualify as a residence district as there would be more than one residence on more than 300 feet of the highway frontage. This obviously cannot be the case. But if UPS's interpretation is accepted, there is almost certainly nowhere in the State of Texas that is not a residence district.

Second, UPS's interpretation renders the phrase "primarily improved with residences" superfluous. What could "primarily improved with residences" possibly mean or apply to if one is supposed to consider the entire lot on which a house is

---

[10] Mr. Leal admitted that Ranger Creek Road was a "country road," that 109 Ranger Creek Road did not have a "real close by" next door neighbor, and that at the time of the accident there was not much development around 109 Ranger Creek Road. (RR5:57-59, 61-62). UPS's own accident report referred to the area as "rural." (RR17:6 (Plaintiffs' Exhibit 28).

located in making this determination? Under UPS's interpretation the statute would read "[r]esidence district means the territory . . . adjacent to and including a highway, if at least 300 feet of the highway frontage <u>has</u> residences." Unfortunately for UPS, Section 541.102(2) requires that "at least 300 feet of the highway frontage <u>is primarily improved with</u> residences." TEX. TRANSP. CODE. ANN. § 541.102(2). "Primarily" means "for the most part." MERRIAM-WEBSTER'S DICTIONARY AND THESAURUS 824 (2006). Therefore, the question is whether or not more than half (*i.e.*, "primarily") of 300 feet of the highway frontage is improved with residences that determines whether an area is a residence district.[11] The interpretation urged by the Rankins is the only one that utilizes the entirety of the statute's language and correctly mirrors the intent and purpose of the statute.[12]

---

[11] UPS asks the Court to take judicial notice of various lot and house sizes in San Antonio, Austin, Houston, and Dallas. These are not the types of things of which the Court can take judicial notice. As one court correctly pointed out, "common knowledge encompasses those facts which are so patently obvious and so well known to the community generally, that there can be no question or dispute concerning their existence . . ." such as the fact that there are twelve inches in a foot. "[T]he more disputable a fact may be, the less likely it will belong to that narrow set of facts judicially recognized as common knowledge." *Brune v. Brown Forman Corp.* 758 S.W.2d 827, 830-831 (Tex. App.–Corpus Christi 1988, writ denied).

[12] UPS contends, based on their completely unsupported statement regarding neighborhoods in San Antonio, Austin, Houston, and Dallas that, therefore, Section 545.301would make it illegal to park in these neighborhoods. First, there is no evidence in the record to support any of this argument. Second, the statute itself provides exceptions for various types of vehicles. Third, municipalities are permitted, by ordinance, to control parking and delivery in residential areas and do so. (RR7:25-26). Fourth, Section 545.301 itself allows parking on the main traveled part of the highway if it is not practicable to park off of the highway. It seems as if the entirely hypothetical situations presented by UPS would largely be resolved by that exception. Unfortunately for UPS in this case, the jury correctly found that it was practicable for Mr. Leal to park entirely off the highway, a fact Mr. Leal admitted, and therefore UPS did not have access to that exception.

Some of the applicable rules of the road change based on whether a driver is inside or outside a residence district. The point of the definition of "residence district" is to provide motorists with requisite notice. If a "residence district" did not require residences—homes—how could a motorist have notice? A 300 foot fence with two homes occupying some portion of a large parcel of real estate would certainly not provide that notice.

Many states have similar statutes defining "residence district" for the purpose of regulating their roadways, and the courts in a number of those states have agreed with this interpretation.[13] *See, e.g., Marshall v. Mullin*, 320 P.2d 258 (Ore. 1958); *Minton v. Gobble*, 304 S.W.2d 337 (Tenn. App. 1957); *McGill v. Baumgart*, 288 N.W. 799 (Wis. 1939). Still other courts have chosen to not establish a rigid mathematical interpretation of "residence district," recognizing that if there is a dispute it is proper to submit the question to the jury. *See, e.g., Gordon v. Cozart,* 110 So.2d 75 (Fla. App. 1959); *Bowling Green-Hopkinsville Bus Co. v. Adams*, 261 S.W.2d 14 (Ky. 1953) (noting that practically every road in Kentucky had two or three or four houses in close proximity, but that did not *ipso facto* make such an area a "residence district.")

---

[13] The statutes interpreted in the other states use "mainly" or "in the main," rather than "primarily," but the import is the same.

These cases confirm that it is the physical prominence of the residential structures *themselves*—and not the land on which the residence sits—that must be considered in determining a "residence district." *Id.* The Virginia Supreme Court has noted that in determining whether the statutorily required frontage is sufficiently occupied to rise to the level of a residence district, "the total frontage of the *buildings* is to be considered . . . to that extent the frontage is 'occupied' or covered by such buildings. But open spaces between the buildings fronting on a street or highway are *not* to be considered because they are not 'occupied' by such buildings within the meaning of the definition." *Thoms v. Dowdy*, 112 S.E.2d 868, 870 (Va. 1960) (emphasis added). Significantly, the Virginia Supreme Court noted that "[c]ourts of other jurisdictions which have considered similar statutes have almost without exception adopted the same view." *Id.*

The selected cases cited by UPS are not to the contrary. While *Baker v. Court of Special Sessions*, 15 A.2d 102 (N.J. 1940) does reject a rigid interpretation that more than 50% of the frontage must be improved by buildings, it did not hold that the frontage abutting residential land was all that mattered. *Id.* at 103. Rather, because that area was zoned as "residential" and would be "colloquially known as a residential section," the court found that "the evidence satisfactorily showed a residential status in the intendment of the statute." *Id.* In other words, the court

merely took a more liberal view of "mainly occupied" and found that more than 50% coverage was not required. *Id.*

The subsequent New Jersey opinion from a lower court in *State v. Mundy*, 273 A.2d 620 (N.J. County Ct. 1970) does take the position urged by UPS, but it is a lone wolf. Two other opinions from courts of equal jurisdiction in New Jersey hold that the *structures* must occupy more than 50% of the highway frontage. *See State v. Zeus,* 56 N.J. Super. 323 (Cty. Ct. 1959); *State v. Bastian,* 78 N.J. Super. 49 (Cty. Ct. 1962). So at the end of the day, UPS has cited to one case from one state with a holding that is the subject of dispute between courts of equal jurisdiction. Contrasted with the overwhelming majority of states that focus only on the *structures*, rather than the total frontage abutting residential land, it is clear that focusing on the structures, as opposed to the entire residential lot, is correct.

The two statutes cited by UPS in support of its proposed definition of "residence" are likewise not helpful and do not compel a different result. The tax code section defines "residence homestead" in the context of Texas's homestead exemption and specifically states that the definition is for purposes of that section only. TEX. TAX CODE ANN. § 11.13(j). It would be silly for the State of Texas to tax only the value of the structure and not the value of all the property owned. The section from the property code is related to the liability of contractors and one of the remedies is for the contractor to buy back the "residence." TEX. PROP. CODE. ANN.

§ 27.0042. Such a scheme obviously would not work if "residence" meant only the structure. In addition, that definition is likewise applicable only to that specific chapter of the Property Code. *Id*. § 27.001 ("In this chapter").

What is helpful, however, is looking at what the Texas Supreme Court has done in a similar circumstance. In interpreting a statute that turned on the term "legal residence," the Texas Supreme Court instructed that, because the statute did not define "residence," it would look to the generally accepted meaning of the word. *Owens Corning v. Carter*, 997 S.W.2d 560, 571 (Tex. 1999). In so doing, the Supreme Court held that "residence" means the "place where one actually lives or has his home; a person's dwelling place or place of habitation; . . . a dwelling house." *Id.* (quoting BLACK'S LAW DICTIONARY 907 (abridged 6th ed. 1991)). Similarly here, the legislature did not define "residence" in the relevant sections of the Transportation Code and so this Court must look to the generally accepted meaning of the word. Just because the legislature used "residences" in the definition of one type of district and "dwelling houses" in another does not mean that "residences" means anything other than what it means. "Residences" and "dwelling houses" are the same thing and refer to the actual structure on the land, not the entirety of the land itself. This is confirmed by the rules governing statutory construction and the great weight of authority on the issue.

The evidence before the jury was that significantly less than 50% of the highway frontage on either side of Ranger Creek Road was improved with residences. (RR18:36 (Defendant's Exhibit 93A)). The jury was entitled to use its collective knowledge to evaluate the evidence presented and to utilize the common meaning of the words in the statute to determine whether or not 109 Ranger Creek Road was located outside a residence district. (RR5:57-62, 219-221; RR6:166-167; RR13:15-23 (Plaintiffs' Exhibits 1AA-1EE), 29 (Plaintiffs' Exhibit 1HH), 47 (Plaintiffs' Exhibit 1T), 56 (Plaintiffs' Exhibit 1Z); RR17:5, 6 (Plaintiffs' Exhibits 26 & 28); Plaintiffs' Exhibits 22 & 29 (admitted for demonstrative purposes); RR18:43-44 (Defendants' Exhibits 99F & 99G), 91-94 (Defendants' Exhibits 144E-144H)). The jury correctly determined that the accident took place outside a residence district, and even if it was error for the trial court to submit the issue to jury, any such error was harmless as the jury's answer was correct. *See Grohman v. Kahlig*, 318 S.W.3d 882, 887-88 (Tex. 2010).

**B.    The evidence is legally and factually sufficient to support the jury's verdict on their negligence per se claim.**

**1.    "Residences" refers only to the residences on the property.**

The Rankins refer the Court to the discussion set forth above in Section V.A.4. of their brief and incorporates it by reference. As shown, the proper interpretation of Section 541.102 of the Texas Transportation Code is that "residences" refers

solely to the residences on the property, not the entire highway frontage, the residential real estate fronting the highway, or the property between the residences.

**2.** **The evidence is more than sufficient to support the jury's finding that 109 Ranger Creek Road is outside a residence district.**

UPS contends that the evidence was not legally or factually sufficient to support the jury's finding in Question 1 that the UPS truck was stopped, parked, or standing outside a residence district at the time of the accident. In reviewing UPS's legal sufficiency point, this Court is to focus on "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. Whether a reviewing court begins by considering all the evidence or only the evidence supporting the verdict, legal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). This standard recognizes the discretion afforded jurors in resolving conflicts in the evidence. The Court can only reverse the jury's verdict based on UPS's challenge to the factual sufficiency of the evidence if it is "so against the great weight and preponderance as to be manifestly unjust; . . . it shocks the conscience; or clearly demonstrates bias." *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 63 (Tex. 1986).

First, the Google map was introduced into evidence by UPS. It was UPS's trial exhibit. (RR18:36 (Def. Exh. 93A)). It defies logic that UPS now complains

that an exhibit it proffered does not accurately reflect the thing UPS introduced it to reflect. These arguments should be rejected by the Court as UPS invited any error with regard to the Google map. *See Bluestar Energy, Inc. v. Murphy*, 205 S.W.3d 96, 100-102 (Tex. App.—Eastland 2006, pet. denied); *Brandywood Housing, Ltd. v. Texas Dep't of Transp.*, 74 S.W.3d 421, 425 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).

The Google map standing alone is more than sufficient to support the jury's answer to Question 1. UPS never complained about the authenticity or accuracy of the Google map at trial—particularly since it introduced the exhibit itself—and any such complaint has been waived. As such, this Court must accept that the Google map accurately reflected the layout and dimensions of the area around 109 Ranger Creek Road. The Google map has a scale that allowed the jury to determine the highway frontage and what portion of the highway frontage was improved by residences. Moreover, because UPS never made the argument at trial that their own exhibit 93A was inaccurate or did not reflect what it purported to reflect, the Rankins never had an opportunity to cure any perceived issue with that piece of evidence.

UPS cites to three out-of-state cases it contends stand for the proposition that a photograph cannot be relied upon as proof of the dimensions or relative proportions of such objects. (Appellants' Brief at 47). In addition to being from other

jurisdictions, the most recent of the three opinions is 1951, when technology was drastically different.

Significantly, Texas courts do not have the same level of distrust in photography. In *Mooneyhan v. Benedict*, 284 S.W.2d 741, 743 (Tex. App.—Austin 1955, no writ), the court referred to photographs reflecting that the "territory adjacent to the highway appears to be open country" to assist it in deciding that the location of an accident was neither a residential nor a business district. In *Operation Rescue-National v. Planned Parenthood of Houston*, 975 S.W.2d 546, 563 (Tex. 1998), the Texas Supreme Court considered maps that had been introduced into evidence that indicated the proposed buffer zones around various clinics in the Houston area.

Second, contrary to UPS's suggestion that the only evidence supporting the jury's finding was the Google aerial photograph, additional evidence further supported the jury's answer to Question 1. The Affidavit of Lori Carroll established that 109 Ranger Creek Road was not in a residence district in the City of Boerne. (RR8:85-86). The pictures and testimony regarding the area around 109 Ranger Creek Road established that it was rural in nature, rather than urban, and not densely populated. (RR5:57-62, 219-221; RR6:166-167; RR13:15-23 (Plaintiffs' Exhibits 1AA-1EE), 29 (Plaintiffs' Exhibit 1HH), 47 (Plaintiffs' Exhibit 1T), 56 (Plaintiffs' Exhibit 1Z); RR17:5 (Plaintiffs' Exhibit 26); Plaintiffs' Exhibits 22 & 29 (admitted

for demonstrative purposes); RR18:43-44 (Defendants' Exhibits 99F & 99G), 91-94 (Defendants' Exhibits 144E-144H)). And the fact that the posted speed limit was 45 miles per hour lent support to the jury's finding that 109 Ranger Creek Road was outside a residence district. (RR5:59-60).

More than enough evidence was admitted to support the jury's answer to Question 1. And UPS presented no controverting evidence, only a different interpretation of "residence district." As such, the jury was entitled to interpret the evidence as it did and its finding should not be disturbed.

**3. In the alternative, even if the Trial Court erred in submitting the Rankins' negligence per se claim to the jury, it is not reversible error.**

UPS contends that, if it is correct that the negligence per se questions were either improperly submitted or not supported by sufficient evidence, this Court must remand the case to the trial court as there is no way to determine how much of the 50% responsibility attributed by the jury to Mr. Rankin and Mr. Leal was attributable to negligence per se standing alone. This argument fails for a number of reasons.

First, UPS did not preserve this error. UPS's proposed charge had negligence per se and negligence liability findings combined into one question, with the jury moving forward to a conditional question based on general negligence only if the jury answered no to the first question. (CR2:133-35). Therefore, even under UPS's

proposed charge, the result would have been the same, *i.e.*, the jury would have answered yes to its proposed Question 2 (finding liability for negligence per se and negligence) and then would have moved ahead to Question 4 to determine proportionate responsibility. *Id.* Rule 278 of the Texas Rules of Civil Procedure required UPS to submit an appropriate proportionate responsibility question (or questions, it is not clear what UPS contends should have been done), and by failing to do so, the failure to submit the question or questions is not grounds for reversal. TEX. R. CIV. P. 278.

Second, even if submission of the negligence per se claim was improper, the jury found that both Mr. Leal and Mr. Rankin were negligent. Negligence per se and negligence are not distinct or competing liability theories. To the contrary, both simply rely upon a failure to exercise ordinary care. The only distinction is that, in negligence per se, the standard is explicitly defined by statute and in negligence the standard is one of ordinary care. In any event, the jury here found that Mr. Leal violated the statute such that he was negligent per se and also found that, without any reference to the standard set forth in the statute, he failed to exercise ordinary care and was negligent. (CR2:194-196). The Jury Charge specifically instructed the jury that its job was to determine the percentages of responsibility for those it "found caused or contributed to cause the occurrence." (CR2:197). Moreover, the jury was told that "[t]he percentage of responsibility attributable to any one is not necessarily

measured by the number of acts or omissions found." (CR2:197). The jury apportioned responsibility based on what it believed were the causes of the accident.

The case cited by UPS proves this point. In *Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212 (Tex. 2005), a jury found both that a hospital was negligent in its treatment of a patient and that the hospital acted with malice in credentialing the physician involved. *Id.* at 214. The jury then found, in one proportionate responsibility question, that the hospital was 40% responsible. After finding that there was no evidence to support submission of the question on malicious credentialing, the Supreme Court considered the effect of submitting that question on the proportionate responsibility question. *Id.* at 224-25. Because of the serious impact it must have had on the jury to find that the hospital acted maliciously in credentialing the physician, the Court stated that "the jury could not conceivably have ignored that finding in apportioning responsibility." *Id.* at 227. The Court made it clear, however, that if the reviewing court is "reasonably certain that the jury was not significantly influenced by issues erroneously submitted to it," any error is not grounds for reversal. *Id.* at 227-28.

Negligence is negligence. This case is very far from the situation present in *Romero*, in which an intentional act was combined with negligent conduct, or at least two very different acts were combined. The jury found that Mr. Leal was negligent per se and negligent. The jury's findings with regard to Mr. Leal were based both

on its determinations with regard to the Transportation Code and on its determination that he failed to exercise ordinary care. (CR2:194-96). The jury then determined that Mr. Leal was 50% responsible for the accident. (CR2:197). This is not a situation in which one theory required a higher level of intent than the other, such that it would influence the jury's proportionate responsibility finding. Unlike in *Romero*, the jury in this case, in answering the proportionate responsibility question, could not have been significantly influenced by submission of the negligence per se question because neither negligence theory required intentional or knowing conduct and because the negligent acts were the same. *See Texas Mut. Ins. Co. v. Morris*, 287 S.W.3d 401, 430 (Tex. App.—Houston [14th Dist.] 2009) (holding that reversal is not required when it is reasonably clear that the jury would have answered the same way on both the challenged theory and an unchallenged theory), *rev'd on other grounds*, 383 S.W.3d 146 (Tex. 2012).

**C.** **The Trial Court correctly admitted the Affidavit of Lori Carroll and correctly excluded portions of the testimony of Sergeant Allison and Megan McGehee.**

**1.** **The Affidavit of Lori Carroll was not hearsay and was properly admitted.**

UPS contends that the trial court erred in admitting the Affidavit of Lori Carroll, the City Secretary for Boerne, Texas, into evidence. The correct standard of review for this point of error is whether the trial court abused its discretion in

admitting the Affidavit. *Waste Mgmt. of Tex. Inc. v. Texas Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 157 (Tex. 2014).

UPS first contends that the Affidavit is inadmissible hearsay. That is incorrect under Texas Rule of Evidence 803(8). TEX. R. EVID. 803(8). The trial court correctly concluded that, based on that exception to the hearsay rule, the Affidavit was not hearsay and was admissible. (RR5:22-25). Rule 803(8) provides that records, reports, statements, or data compilations, in any form, of public offices or agencies setting forth: (A) the activities of the officer agency: (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report…; or (C) in civil cases as to any party and in criminal cases as against the state fact, factual findings resulting from an investigation made pursuant to authority granted by law. This is exactly what the Affidavit of Lori Carroll is.

The Affidavit sets forth Ms. Carroll's position, sets forth her job responsibilities in that position, and specifically identifies as one of her job responsibilities verifying the location of the City of Boerne business and residence districts, as those terms are defined by Tex. Transp. Code § 541.102. (RR8:85-86). The Affidavit then states, as verified by a public officer, the facts that resulted from an investigation made pursuant to an authority granted by law, *i.e.*, that 109 Ranger Creek Road is outside the City of Boerne's corporate city limits and not within a business or residence district of the City of Boerne as of June 15, 2009. (RR8:85-

86). This type of document is exactly the type of document anticipated by Rule 803(8), and therefore the Affidavit was properly admitted.

UPS next complains that because the Affidavit is allegedly conclusory it should not have been admitted into evidence at trial. UPS cites no authority for that proposition. Rather, UPS cites summary judgment cases in which a conclusory affidavit was found to be conclusory. UPS does not cite a single case in which an appellate court in the State of Texas has found that an affidavit that falls under the exception to hearsay provided by Tex. R. Evid. 803(8) is not admissible at trial.

UPS also contends that it can raise this objection for the first time on appeal. Not surprisingly, UPS makes this argument because it did not raise this contention with the trial court. Again, UPS cites only to summary judgment cases and the particular rules that apply in that context regarding the difference between substantive and procedural defects in an affidavit. The problem with UPS' position, however, is that the distinction between defects in form and defects in substance of affidavits used to support a motion for summary judgment is specific to the summary judgment rule. See Tex. R. Civ. P. 166a(f). UPS has cited no authority, and the Rankins are aware of none, that would extend that rule to a jury trial. To the contrary, Texas law specifically requires that the grounds for an objection be made with sufficient specificity to allow the trial court to make a ruling on the objection. Tex.

R. App. P. 33.1(a)(1)(A). UPS completely failed to do so, and therefore this point of error has not been preserved and is waived.

Even if it was not waived, however, the Affidavit is not conclusory. Ms. Carroll is the public official for the City of Boerne charged with making the very determination made in her Affidavit and the information setting forth her qualifications and her conclusions are set forth in the Affidavit. An affidavit is not "conclusory" merely because the affiant reaches a conclusion after an investigation. *Strother v. City of Rockwall*, 358 S.W.2d 462, 469 (Tex. App.—Dallas 2012, no pet.).

UPS also contends that Ms. Carroll's Affidavit was irrelevant, misleading, and confusing to the jury. Its argument seems to be that the Affidavit was misleading or confusing because 109 Ranger Creek Road is outside the city limits of Boerne. However, the Affidavit specifically sets forth that 109 Ranger Creek Road is outside the city limits of Boerne. (RR8:85-86). It is difficult to understand how the Affidavit could be irrelevant, misleading, or confusing when it states the very thing that UPS wants it to state. The trial court took UPS's contention into account, and correctly ruled that because the Affidavit said exactly what UPS was arguing, UPS could, therefore, argue to the jury their position on the import of Ms. Carroll's Affidavit. (RR4:58-61). It is interesting to note that this piece of evidence that UPS contends was so critical was only mentioned once in passing by the Rankins and was not

mentioned at all by UPS during closing arguments. (RR10:107). It is difficult to take seriously UPS's argument when the evidence complained of merited only one passing reference from the parties when arguing the case to the jury.

**2.    The excluded testimony of Sergeant Allison was irrelevant and without any basis in law or fact, and was properly excluded.**

UPS contends that the trial court erred in excluding portions of Sergeant Allison's deposition testimony. The trial court's decision to exclude portions of Sergeant Allison's testimony can be disturbed on appeal only if the trial court abused its discretion. *Waste Mgmt. of Tex. Inc. v. Texas Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 157 (Tex. 2014).

Although UPS objected to the exclusion of a few portions of the deposition of Sergeant Allison at trial, on appeal it complains only about the exclusion of four questions and four answers from his deposition. (See Appellants' Brief at 54). UPS contends that the excluded testimony constituted Sergeant Allison's opinion that Mr. Leal was not illegally parked. A plain reading of the testimony, however, does not support that conclusion.[14] UPS's counsel certainly attempted to illicit that testimony when she asked Sergeant Allison if he considered 109 Ranger Creek Road to be a "residence district." It appears Sergeant Allison was uncomfortable utilizing that statutorily-defined phrase, however, and instead stated that he considered that area

---

[14] Although, as will be discussed later, Sergeant Allison did testify to that very thing in testimony that was not excluded by the trial court and was heard by the jury.

to be a "residential area." (RR19:29-31). In fact, UPS's counsel pressed Sergeant Allison on the phrase "residence district," he reiterated that "I am going to say its residential area. That's what it is. That's what we consider it. That's what I'm going to say." (RR19:31). Sergeant Allison never utilized the term "residence district" and, in fact, refused to do so.

Most significantly, Sergeant Allison admitted that his use of the term "residential area" was not based on an interpretation or application of Section 541.102 of the Texas Transportation Code, but rather was based solely on the fact that there were houses along the road. (RR8:126, 139).

The testimony that was excluded was of no probative value. UPS contends that the evidence was important because it showed that Mr. Leal was parked in a residence district. Sergeant Allison's testimony, however, was not in any way based on the definition of that term in the Texas Transportation Code. *Id.* As the trial court correctly noted, it would have been entirely inappropriate to have someone like Sergeant Allison, "who doesn't know a thing about the statute, trying to opine about something he's admittedly completely clueless about." (RR8:93).

In addition, the excluded testimony of Sergeant Allison about which UPS complains was his testimony attempting to interpret the definition of residence district from the Texas Transportation Code, a task he admittedly did not do. (RR8:126, 139). UPS was allowed to introduce testimony from Sergeant Allison

that Mr. Rankin had the duty to follow the same traffic laws as vehicles, that Mr. Rankin had a duty to keep a lookout for vehicles, that Mr. Rankin had a duty to ride his bike at a safe speed in order to respond to traffic conditions, that Mr. Rankin had some responsibility to take evasive action to avoid a stationary object, and that there was enough space for a cyclist to have gone around the UPS truck. (RR8:119-120). Sergeant Allison was allowed to testify that he had observed commercial vehicles, mail trucks, and garbage trucks stopping in similar fashion as the UPS truck in this case. (RR8:122). Sergeant Allison was allowed to testify that there were other residences along Ranger Creek Road (RR8:123). And, importantly in response to UPS's point of error, Sergeant Allison was allowed to testify that he did not cite Mr. Leal for any violation of parking statutes and that he did not feel that Mr. Leal violated any parking statutes.[15] (RR8:124).

Sergeant Allison was not qualified to testify as to the application of the Texas Transportation Code in this instance. By his own testimony he had only a "brief overview" of the traffic laws on Texas during his training, as his primary function is not traffic. (RR8:109-110). He testified that he was not generally called upon to make determinations whether an area is a "residence district" for parking purposes.

---

[15] Sergeant Allison's testimony on this subject was of limited or no probative value. It was based solely on what was told to him by Mr. Leal, without conducting any real investigation, and he was admittedly not familiar with the sections of the Texas Transportation Code in question. (RR8:137-140).

(RR8:139). Sergeant Allison did not purport to be an expert on the Texas Transportation Code and UPS did not establish that he was, therefore the trial court properly excluded the proffered expert testimony. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 499 (Tex. 2001)

Sergeant Allison also did not have any basis for a purported opinion that 109 Ranger Creek Road was within a "residence district" as that term is defined by the Texas Transportation Code. *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 628 (Tex. 2002). In fact, he never used that phrase. Moreover, he admitted to having no actual expertise on the subject of whether the area around 109 Ranger Creek Road met the criteria of a "residence district." *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 499 (Tex. 2001). The trial court properly excluded the testimony because it had no basis in law and fact, was not being offered by an expert on the subject, and carried the risk of significant prejudice to the jury in that it would have been hearing testimony from a law enforcement official which could carry great weight in their minds. TEX. R. EVID. 401, 403, 702, & 703.

Importantly, even if exclusion of that portion of Sergeant Allison's testimony was error, UPS was able to present to the jury through other testimony, including other portions of the deposition testimony of Sergeant Allison, essentially the same information. Specifically, Sergeant Allison testified that he did not believe Mr. Leal had violated any parking statutes and did not issue a citation, and UPS argued that

point vociferously during closing argument to the jury. (RR8:124; RR10:140-42). Therefore, any error, which the Rankins deny, was harmless as UPS obtained and introduced to the jury the same information, and argued it at length in closing argument. TEX. R. APP. P. 44.1.

### 3. The excluded testimony of Megan McGehee was irrelevant and duplicative, and was properly excluded.

UPS further complains about the exclusion of two questions and two answers from the deposition testimony of Megan McGehee, who resided at 109 Ranger Creek Road at the time of this incident. As with the other evidentiary complaints from UPS, the trial court's decision to exclude that testimony is reviewed under an abuse of discretion standard. *Waste Mgmt. of Tex. Inc. v. Texas Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 157 (Tex. 2014).

It is difficult to understand exactly what error could have arisen from the excluded testimony. The testimony was that there were families on each side of 109 Ranger Creek Road. Sergeant Allison testified to the fact that there are residences on either side of 109 Ranger Creek Road. (RR8:123). The jury saw maps and photographs that showed residences on either side of 109 Ranger Creek Road. (Defendants' Exhibit 93A). The Rankins never contested that there were houses on either side of 109 Ranger Creek Road; it is simply something that was not in dispute. The proffered testimony was, therefore, irrelevant and duplicative as that evidence was already before the jury and was undisputed. The only fact issue as to the

neighbors on either side of 109 Ranger Creek Road was with regard to how densely the area was populated and how far apart those residences were, which was necessary for the jury to make a determination of whether 109 Ranger Creek Road was within or outside a residence district. That was a fact that was determined by the jury in response to Question 1, and the testimony of Ms. McGehee offered nothing to the jury in its efforts to resolve that, or any other, question. TEX. R. EVID. 401 & 403. The trial court did not abuse its discretion in excluding the evidence but, even if the exclusion was error, it was harmless. TEX. R. APP. P. 44.1.

**D.     The Rankins' counsel made no judicial admission during closing argument.**

To be considered a judicial admission, a statement must be clear, unequivocal, and deliberate. *Spradlin v. State*, 100 S.W.3d 372, 380 (Tex. App.–Houston [1st Dist.] 2002, no pet.). This rule obviously does not do away with long-standing Texas policy allowing parties to plead, present evidence, and argue in the alternative. In fact, that is explicit in the requirement that the statement be unequivocal. Arguments made in the alternative do not constitute judicial admissions. *Id.* at 380-81.

UPS only tells half of the story, or none of it, throughout its brief. In this instance it tells half. Mr. Marketos in his closing argument clearly articulated to the jury the Rankins' argument that the vehicle could have been in motion, thereby constituting negligence—including that the vehicle could have been put in motion shortly before the collision after it was parked. (RR10:157-158). However, he also

clearly articulated that even if the jury determined that the truck was not in motion at the time of the incident, the location at which it was parked indisputably would be a violation of the statute, and therefore negligence per se, as well as constituting common law negligence. (RR10:104) ("let's start there with where he chose to park, at least as he explains it, in this case"); (RR10:105) ("He didn't know what a – the legal definition of a residential district"); (RR10:105-07) (arguing 109 Ranger Creek road outside "residence district"); (RR10:107) ("When [Scott Rankin] struck the vehicle, . . . whether it was parked or otherwise, one thing we can all agree on is, Mr. Rankin was riding his bike on the highway, that's his legal right, and nobody is arguing otherwise."); (RR10:108) ("But he opted not to park on the shoulder. This is where he says he was parked."); (RR10:109) ("but where he was parked, he left his vehicle unattended, and he chose to park, and it was in the most direct route to Ms. McGehee's front door."); (RR10:152) ("Would Mr. Rankin be paralyzed if this truck were not in such a hurry and had pulled off the highway?").

In addition, UPS assumes that the alternative statements made by the Rankins' counsel during closing argument are inherently inconsistent with the jury's answers to Questions 1 and 2, but that is not necessarily the case. To be in violation of the Texas Transportation Code, the jury had to find that the UPS truck was "stopped, parked, or standing outside of a 'residence district'" at the time of the accident. (CR2:194). The jury could have found that Mr. Leal parked off of the roadway in

one of the other practicable places to park, backed onto the roadway after returning to his truck, and was stopped briefly while shifting into drive when the collision with Mr. Rankin occurred. Such a scenario would be consistent with the statements made by counsel for the Rankins and with the jury's verdict.

The statements cited in Appellants' Brief are not unequivocal and were made in the alternative. In addition, they are not necessarily inconsistent with the jury's verdict. As such, they are not judicial admissions.

**E.** **The evidence is legally and factually sufficient to support the jury's verdict that the negligence of UPS's driver, Roland Leal, proximately caused the occurrence.**

UPS's driver, Roland Leal, parked unreasonably, unsafely, and illegally. The jury found him negligent and 50% at fault. His vehicle was stopped partially on the roadway and partially off the roadway. The jury determined that Mr. Leal was negligent in stopping the vehicle where he did. Whether he stopped after backing up or had parked in that location, the jury determined that Mr. Leal was negligent in stopping his truck where he did. That was a question of fact for the jury alone to determine. Proximate cause was not contested – breach of duty was, vigorously.

UPS now argues that proximate cause should be decided in its favor as a matter of law and should never have gone to the jury despite the fact that UPS submitted a Proposed Jury Charge which included almost the very same question on negligence and proximate cause that was actually submitted to the jury. (CR2:132-

135). That alone should bar UPS's argument as invited error. *See Bluestar Energy, Inc. v. Murphy*, 205 S.W.3d 96, 100-102 (Tex. App.—Eastland 2006, pet. denied).

Even if UPS's contention in this regard is not barred by the invited error doctrine, it does show that UPS is less than serious about its arguments and is simply summoning up every possible argument, regardless of its merit. Proximate cause is uniquely and almost always a question of fact for the jury. *Clark v. Waggoner,* 452 S.W.2d 437, 440 (Tex. 1970); *Homeland Express, LLC v. Seale*, 420 S.W.3d 145, 149 (Tex. App. – El Paso 2012, no writ); *Rodriguez v. Moerbe*, 963 S.W.2d 808 (Tex. App. – San Antonio 1998). The jury's decision was proper and was based on more than sufficient evidence.

But for the location of the truck partially on the roadway, Scott Rankin would not have run into it. About that there can be no dispute. Had the truck been located safely off the roadway, this collision would never have happened because Scott Rankin was riding his bicycle on the roadway. Cause in fact – the "but for" portion of proximate cause – is unquestionably present and has not been challenged by UPS.

UPS argues that its driver's negligence was not the proximate cause of Mr. Rankin's injuries for the following reasons: (1) Scott Rankin should have seen the truck in front of him and therefore; (2) Scott Rankin's negligence was the sole proximate cause of the accident; (3) UPS's negligence was not a substantial factor in causing the injuries; (4) Scott Rankin had an opportunity to avoid the effect of

UPS's negligence; and (5) the potential of a collision with the back of a dangerously stopped UPS truck would not have been foreseeable to the UPS driver. None of these arguments have merit. Even a cursory understanding of the law of proximate cause, combined with the facts of this case, demonstrate the lack of substance of the arguments.

The visibility of the truck to Scott Rankin is unknown. No one recreated the exact conditions or events of the fateful day that Scott Rankin collided with the truck. No one can know exactly what he could see. The jury heard the testimony upon which UPS relies and also saw photographs and videos in which it was very difficult to see a truck parked in that exact location until mere seconds before coming upon it. (Plaintiffs' Exhibits 22 & 29 (admitted for demonstrative purposes); RR18:43-44 (Defendants' Exhibits 99F & 99G), 91-94 (Defendants' Exhibits 144E-144H)). Scott and Rachelle Rankin strongly disputed the allegation that Scott Rankin had suffered from heat induced illness earlier in the day and UPS's own expert testified there was no medical evidence of any such thing. (RR6:48, 58, 116; RR8:246-247). Scott Rankin testified about his pattern and practice with regard to being aware of his surroundings when riding his bicycle. (RR6:155-159, 163-164, 170-173). His ability to see the truck or get around it without colliding with it, however, was obviously considered by the jury and the jury found that UPS and Mr. Rankin each deserved 50% of the fault.

All the evidence upon which UPS relies to "establish" lack of proximate cause was disputed at trial and it appears the jury simply found the Rankins' evidence more credible.[16] The fact that the truck may have been visible to Mr. Rankin (for whatever period of time) before Mr. Rankin collided with it does not mean that UPS was not negligent. Indeed, it is well established that there may be more than one cause of an event, the jury was so instructed, and there was more than one cause in this case. The jury considered the facts, and held both parties at fault.

Likewise, the claim that Scott Rankin's negligence was the sole proximate cause of the wreck is not true factually or legally. If the truck had not been stopped where it was, the collision could not have occurred. One of the cases cited by UPS, *Lawrence v. City of Wichita Falls*, 122 S.W.3d 322 (Tex. App. – Fort Worth 2003, pet. denied), shows as a matter of law that Scott Rankin's conduct could not be the sole proximate cause of his injuries. The *Lawrence* court states, correctly, that sole proximate cause is an "inferential rebuttal issue available when the evidence shows that a third person's conduct, not the conduct of any of the parties to the lawsuit, is the only proximate cause of the damage." *Id.* at 329 (citing *Montes v. Pendergrass*, 61 S.W.3d 505, 508 (Tex. App. – San Antonio 2001, no pet.). The *Lawrence* court

---

[16] In fact, in reading UPS's brief one might be led to believe that there was no conflicting evidence at trial and no contested fact issues, as UPS repeatedly represents as uncontested that which was heavily contested.

repeats the familiar refrain that proximate cause is a question of fact for the jury to decide, again citing *Montes* at page 508.

UPS argues that a key element in the "substantial factor" analysis for proximate cause is "whether the Plaintiff had an opportunity to avoid the effects of the Defendant's conduct." This is simply untrue. Whether a plaintiff had an opportunity to avoid the effects of the defendant's conduct is a question of proportionate responsibility.

UPS cites *Union Pump Company v. Allbritton*, 898 S.W.2d 773, 774 (Tex. 1995) for this unfounded, incorrect statement that confuses proximate cause with the standard of care. The Court in *Union Pump* never held that the plaintiff's opportunity to avoid the effects of the negligence should be considered in determining if proximate cause exists. The Court concluded that the pump fire in *Union Pump* only created the condition that made the injuries possible, because forces generated by the fire had "come to rest" when the plaintiff fell off the pipe rack and suffered her injuries. *Id.* at 776. UPS's confusion of proportionate responsibility with proximate cause is not supported by the *Union Pump* decision, nor any other Texas case.

The effects of the UPS truck being stopped on the highway had not "come to rest" when Scott Rankin collided with the back of the truck. The location of the

truck, found by the jury to be parked unreasonably, unsafely, and illegally, is exactly what caused his debilitating injuries.

Just to be sure that it does not miss any opportunity to argue any possibly theory, UPS also throws in a lack of foreseeability. By arguing to this Court that its driver could not have reasonably foreseen the potential effects of his negligence or potential for harm, UPS ignores its owns driver's testimony that he was trained by UPS that backing the vehicle should not be undertaken because of the risk of harm and that *backing* and *parking* are two of the largest reasons for loss to UPS. (RR5:105-109). It further ignores Mr. Leal's testimony that the place he allegedly parked was safer for the UPS truck, but that being entirely off of the roadway would have been safer for other users of the roadway. (RR5:104). Finally, it ignores the jury findings that Mr. Leal was negligent by stopping his vehicle as he did. (CR2:194-196).

The law could not be clearer that foreseeability does not require that a person anticipate the precise manner in which an injury will occur once he has created a dangerous situation through his negligence. *Travis v. City of Mesquite*, 830 S.W.2d 94 (Tex. 1992); *Rodriguez v. Moerbe*, 963 S.W.2d 808, 818 (Tex. App. – San Antonio 1998, no writ). The same cases also instruct that there can be concurrent proximate causes of an accident and all persons whose negligent conduct contributes to the injury, proximately causing the injury, are liable. *Id.*

The cases relied upon by UPS for the proposition that proximate cause should be decided in its favor as a matter of law because the causation is too attenuated are easy to distinguish. This Court's unpublished opinion in *Turner v. Cruz*, 2010 Tex. App. LEXIS 10216 (Tex. App.—San Antonio Dec. 29, 2010, no pet.), for example, involved an automobile accident in which an intoxicated driver, traveling at an excessive speed, hydroplaned on a wet highway, crossed a lane into oncoming traffic and hit a vehicle driven by defendant Cruz. This Court did in fact hold in that case that every motorist has a duty to keep a proper lookout, and is not required to anticipate negligence or other unlawful conduct on the part of another, and in that case that rule excused Cruz from any liability for any of his acts or omissions in not being able to stop in time to avoid the collision. That principle would apply to excuse Mr. Rankin in this case. And the facts in that case are very different from this case. It turned on duty. This Court found that defendant Cruz owed no duty and did not breach any duty. UPS does not yet have the temerity to argue in this case that it owed no duty to other users of the roadway. Duty is not an issue in this appeal.

The Court in *Southwestern Bell Telephone Company v. Hertz Equipment Rental Company,* 533 S.W.2d 853 (Tex. App. – Fort Worth 1976, writ ref'd n.r.e.), concluded that the acts of a driver of a rental vehicle, by driving with an illegal load in excess of 13 feet 6 inches high, was a proximate cause as a matter of law of damage to the telephone company's telephone cable. *Id.* at 856-57. The court noted

that the operation of the truck with that load could not be a remote cause of the event, just as the stopping on the roadway by UPS could not be the remote cause of this event. *Id.*

*Ambrosio v. Carter's Shooting Center, Inc.*, 20 S.W.3d 262 (Tex. App.–Houston [14th District] 2000 pet. denied) contains an excellent discussion of proximate cause. Noting that the Supreme Court has recognized that certain causes are insufficient to constitute the legal cause of an injury, the *Ambrosio* court discussed *Bell v. Campbell,* 434 S.W.2d 117, 122 (Tex. 1968); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470 (Tex. 1991); and the aforementioned *Union Pump Company v. Allbritton*, 898 S.W.2d 773 (Tex. 1995), the triad of Texas cases holding proximate cause to be too remote or attenuated. *Ambrosio,* 20 S.W.3d at 266-68. The court noted that in each of those cases, the negligence charged to the defendants had not caused the injury or death, as it did directly in this case. *Id.*

In *Bell*, three people were injured when they were struck by another vehicle while attempting to move a trailer which had overturned as a result of an earlier accident that was blocking a lane of traffic. *Id.* at 267. In *Lear Siegler*, the plaintiff had been trying to reattach wires to a sign that was being pulled behind a highway department truck. *Id.* While he was trying to do so, an oncoming vehicle, whose driver was asleep, struck the sign, which in turn, struck and killed Perez. *Id.* The

claimed negligence of the manufacturer of an allegedly defective sign was not the cause of the plaintiff's death. *Id.*

In *Union Pump*, after a fire, the plaintiff had gone to perform certain repairs on a valve. *Id.* After reaching the valve, it was determined that the repair was no longer necessary. *Id.* The plaintiff then chose to climb over the pipe rack instead of taking the safer route around it, but slipped off the pipe rack and injured herself. *Id.* The Texas Supreme Court concluded, as mentioned previously, that the acts or omissions of the defendant had run their course, and it was not the fire that caused the injury. *Id.* at 267-68.

In this case, there are no such extenuating circumstances. There are no third parties. This was a simple, and tragic, matter of a collision between two users of the roadway. The jury heard the disputed evidence on visibility, Scott Rankin's physical condition, Scott Rankin's pattern and practice when riding, viable alternative locations for the truck, and Mr. Leal's knowledge of the dangers of the location of his truck and determined fault between the parties. Proximate cause was a simple thing. If the truck had not been parked where it was, the collision could not have occurred (cause in fact). The location of the truck was a substantial factor in bringing about the accident, and the driver of the UPS truck knew and should have foreseen that his negligent acts could lead to harm to another. Nothing came to rest until Scott Rankin was a quadriplegic.

*Homeland Express, LLC v. Seale*, 420 S.W.3d 145 (Tex. App. – El Paso 2012 no writ) involves facts very similar to those in this case. A truck driver for Homeland Express parked his 18-wheel tractor trailer partially on the shoulder and partly on the roadway of Interstate 10 in Culberson County. *Id.* at 147. A few minutes later, a van driven by a grandfather and carrying his 14 year old grandson approached the rig traveling eastbound on I-10. *Id.* The driver swerved to the right onto the shoulder to avoid the maneuvers of a third vehicle which cut in front of the van, and as he attempted to come back into the right hand lane of the highway, the van clipped the left rear of the 18 wheeler with the van's right front bumper. *Id.* The grandson was seriously injured. *Id.* at 148.

The evidence was that the accident would not have occurred had the truck driver not parked where he did. *Id.* at 149-50. The truck driver had also violated trucking regulations by not placing reflective devices behind his truck. *Id.* at 150. The Court in the *Homeland Express* case distinguished *Lear Siegler*, *Bell*, and *Union Pump* in much the same way as those cases are distinguished from this case above. *Id.* at 150-51. The jury verdict finding the negligence of the truck driver to be the proximate cause of the grandson's injuries was affirmed. *Id.* at 152.

Proximate cause was never an issue in this case. The negligence of the UPS driver contributed to cause the collision, which resulted in profound injuries to Scott Rankin. UPS objected to the submission of the negligence questions (2 and 3) to the

jury, but only after it had submitted the same questions itself. There were no third parties, no remoteness, and no attenuated causation in this case. *Bell, Union Pump,* and *Lear Siegler* all involved unusual circumstances in which causation was not easily nor logically seen. Proximate case is clear, logical, and indisputable in this case.

**F.      The jury's verdict that Scott Rankin was 50% responsible is the consummate jury question and is supported by legally and factually sufficient evidence.**

The Court is not free to substitute its judgment for that of the jury, and should decline UPS's invitation to do so. *Larson v. Cactus Utility Co.*, 730 S.W.2d 640, 641 (Tex. 1987). As discussed above, the evidence cited by UPS as conclusively establishing proportionate responsibility was disputed and the jury heard significant evidence to the contrary. The Rankins' counsel did not state that Mr. Rankin rode with his head down for over a minute. That was a recap of testimony presented by UPS's expert and was used for effect to point out the outrageous nature of UPS's position. The jury was presented with significant evidence that contradicted and cast doubts upon Mr. Leal's version of events and the distance from which the truck could be seen. It is absurd for UPS to use Mr. Rankin's attempt to console Mr. Leal as a weapon for its legal argument. Mr. Rankin testified as to those statements, indicating that he was concerned for his life and hoped to provide Mr. Leal with some comfort. (RR6:180-183). Mr. Rankin did not at that time have any memory

or real information about how the accident occurred. (RR6:183). He could not possibly have known who was at fault in the accident, as all he knew about the accident came from information provided by Mr. Leal. The fact of the matter is, the jury disbelieved UPS's evidence and believed the Rankins' evidence. That is a job that is uniquely within the province of the jury and their verdict should not be disturbed.

**G.   The Trial Court correctly denied UPS's Motion for Directed Verdict and correctly refused to instruct the jury regarding the alleged effect of compliance with applicable parking laws.**

The complaints raised by UPS in its final, catch-all section are all reviewed for an abuse of discretion by the trial court. All the contentions in this section are based on UPS's erroneous interpretation of "residences" and "residence district," which has been addressed above. The trial court did not err in failing to instruct the jury as requested by UPS because the jury found that UPS did not comply with the applicable parking laws. (CR2:194-95).

Moreover, the trial court's decision to refuse UPS's requested instruction regarding Mr. Leal's alleged compliance with the applicable parking rules was not an abuse of discretion.[17] The Texas Pattern Jury Charge does not contain any such instruction. Instead, UPS relies upon Section 288C of the Restatement (Second) of

---

[17] The trial court was further justified in refusing to submit this instruction as it would constitute an improper comment on the weight of the evidence.

Torts for this proposition. UPS told the trial court and now tells this Court that a Texas court has adopted that section. (Appellants' Brief at 69). That statement is patently untrue.

The case cited by UPS as having adopted Section 288C of the Restatement (Second) of Torts is *Moore v. Brunswick Bowling & Billiards Corp.*, 853 S.W.2d 842 (Tex. App.—Houston [1st Dist.] 1993), *rev'd on other grounds*, 889 S.W.2d 246 (Tex. 1994). That case was focused on whether the Federal Boating Safety Act of 1971 preempted the plaintiff's state common law claims. *Id.* at 843-46. The court determined that it did. *Id.* at 846.

One justice dissented, and would have held that the common law claims were not preempted. *Id.* at 846-50. The dissent referenced Section 288C of the Restatement (Second) of Torts the discussion of why that justice disagreed with the majority holding that the claims were preempted. *Id.* at 848. That is far from being adopted by a Texas court. It is the very opposite of it. Counsel for the Rankins has been unable to locate any other reported decision from a Texas court that even references Section 288C of the Restatement (Second) of Torts.

In addition, Section 288C of the Restatement (Second) of Torts was referenced by the dissent in *Moore* for the proposition that "[c]ompliance with regulatory standards may be admissible on the issue of care but does not require a jury to find a defendant's conduct reasonable." *Id.* As discussed above, UPS was

allowed to introduce evidence that Mr. Leal did not receive a citation and Sergeant Allison did not believe he violated the parking laws, and it argued that fact at some length to the jury during closing arguments.[18]  (RR8:124; RR10:140-42).  The trial court admitted evidence of Mr. Leal's alleged compliance with the regulatory standards and did not abuse its discretion in refusing to submit the requested instruction to the jury.  The jury, however, did not believe he complied with the Texas Transportation Code, making the point moot.

## VI. **PRAYER**

Wherefore, premises considered, Appellees request that the Court of Appeals affirm the judgment below, award them their costs of court incurred herein, and for such other and further relief, general or special, at law or in equity, to which they may show themselves justly entitled.

---

[18] The jury also heard evidence that Sergeant Allison was not familiar with the Transportation Code sections and was not applying them to reach his conclusion that Mr. Leal did not violate the parking laws.  (RR8:126, 139).

Respectfully submitted,

**THE PERRIN LAW FIRM**
1910 Pacific Avenue, Suite 6050
Dallas, Texas 75201
Telephone:   (214) 646-2004
Facsimile:    (214) 646-6117
Email:  dougperrin@perrinlaw.org
             markperrin@perrinlaw.org

*/s/J. Mark Perrin*
Doug Perrin
State Bar No. 15796520
J. Mark Perrin
State Bar No. 24013313

**REESE GORDON MARKETOS**
750 N. St. Paul Street, Suite 610
Dallas, Texas 75201
Telephone:  (214) 382-9810
Facsimile: (214) 501-0731
Email: pete.marketos@rgmfirm.com

*/s/Pete Marketos*
Pete Marketos
State Bar No. 24013101

KEELING & DOWNES, P.C.
1500 McGowen Street
Houston, Texas 77004
Telephone: (832) 214-9900
Fax: (832) 214-9908
Email:  bck@keelingdownes.com

*/s/Byron Keeling*
Byron Keeling
State Bar No. 11157980

ATTORNEYS FOR
APPELLEES

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies on this the 30th day of January, 2015 that, according to the word count of the computer program used to prepare the document, Appellees' Brief contains 14,396words.

*/s/J. Mark Perrin*

## CERTIFICATE OF SERVICE

This will certify that a true and correct copy of the above and foregoing document was forwarded to all counsel of record in the above cause through the Court's electronic case filing system, on this the 30th day of January, 2015.

Ricardo Reyna
Audrey A. Haake
Brock, Person, Guerra, Reyna P.C.
17339 Redland Road
San Antonio, Texas 78247

W. Randall Bassett
Bradley W. Pratt
King & Spalding, LLP
1180 Peachtree Street, NE
Atlanta, Georgia 30309

H. Victor Thomas
King & Spalding, LLP
1100 Louisiana, Suite 4000
Houston, Texas 77002

*/s/J. Mark Perrin*